JAMES E. THOMPSON, Plaintiff in Error, *v.* F. M. FIELD *et al.*, Defendants in Error.

*Mortgages—Instalments.*—Upon the foreclosure of a mortgage securing notes maturing at different dates, the notes are to paid from the proceeds of sale in the order in which the notes mature—Mitchell v. Ladew, 36 Mo. 526, P. 1, reviewed and affirmed.

*Error to Lafayette Circuit Court.*

The plaintiff in error, who was also the plaintiff in the court below, commenced suit, returnable to the May term of the Lafayette Circuit Court, in the year 1864, on a promissory note for ten thousand dollars, secured by mortgage on real

and personal property; the suit was to have the mortgage foreclosed. The mortgage was executed by the defendants, Francis M. Field and his wife Sarah Field, to secure the payment of three several promissory notes, each for ten thousand dollars; one of these notes was assigned to plaintiff, one to the defendants Charles D. Carr and Davis F. Carr, and the other to the defendant Wm. R. Estell. These notes fell due at different times: they were executed by defendant Francis M. Field, together with two other notes, each for the like sum, in consideration of the purchase of a tract of land in Lafayette county, together with some negroes and other personal property; the price of said land, negroes and other property being $50,000, which said F. M. Field had purchased of one John H. Chiles. These notes were dated April 4, 1861; one payable thirty days after its date—one on or before the 1st day of April, 1862—the third on or before the 1st April, 1863: the other two notes payable April 1, 1864, and April 1, 1865. The mortgage was made to secure the payment of the three notes first falling due, and nothing was said in the mortgage about the fourth and fifth notes. These five notes were all payable to said J. H. Chiles or order; all on their face expressed to be for the purchase of land, negroes, &c., payable at the Farmers' Bank in Lexington, Mo., and to bear interest at ten per cent.; the first note, due in thirty days, to bear said interest from 1st April, 1861—the other notes to bear interest from maturity.

The defendants filed their several answers. By a written agreement, the matters in controversy were all settled except the single question involving the distribution of the funds arising on the sale of the mortgaged property. The defendants Carrs being the holders of the note first falling due, claimed to have that note paid in full first; the defendant Estell, holding the note that fell due secondly, claimed to have his debt fully paid next to the Carrs' debt and in preference to plaintiff's debt, and the plaintiff contended that he was entitled to his proportionate share arising from the sale of the mortgaged land. Chiles and Field made in the mort-

gage stipulations that "the said Field, in case he should from year to year, on the 1st day of June of each year, pay over to said Chiles, on said notes, the profits on the farming operations of said Field on the said land and farm, then the time of credit on said notes is extended to the first day of April, 1870—said notes, nevertheless, to bear interest from their maturity on the face thereof as aforesaid. Now if the said Francis M. Field, his executors and administrators, shall well and truly pay off and discharge the sums of money evidenced by the said three promissory notes, with all interest thereon, according to the tenor of said notes and said agreement for the extension of the time for the payment thereof as aforesaid, then this conveyance shall be void, otherwise to be and remain in full force and virtue. It is expressly understood, also, that said notes are to be a lien upon and satisfied out of the proceeds of said land property in the order in which they are and may become due, those coming due first to be paid in preference and before the others."

The plaintiff read the mortgage in evidence and also his note, and likewise the agreement settling the rights to recover. The defendants then offered in evidence the deposition of the said J. H. Chiles. The plaintiff objected to the same as evidence, and moved the court to exclude the whole deposition. The motion was in part overruled and in part sustained. The plaintiff excepted to the ruling of the court. The defendants then read the portions of the deposition not excluded. The court decreed a foreclosure, and ordered and adjudged that the lands mortgaged should be sold, and the proceeds of the sale applied and distributed so as to pay the amount due to the defendants Carrs first, then to the defendant Estell, and then to the plaintiff, in this order.

*Ryland & Son,* for plaintiff in error.

The testimony of the deponent Chiles and the exhibit to his deposition were incompetent. In this case, the deposition of Chiles cannot be received in evidence in order to aid the court to construe a written agreement—the mortgage.

The court below misconstrued the mortgage read in evidence. The obvious meaning of the agreement in the latter part of the mortgage refers to the manner of the payment of the net proceeds of the farm and other mortgaged property, in case such net proceeds be paid annually on the 1st of June of each year, thereby extending the time of the maturity of all three notes until April, 1870, when all the said three notes would be due and payable at the same time; but the net proceeds of the farm were to be applied to the extinguishment of the note falling due first, then the second note, then the third note; but this manner of payment and this time of paying depend only and alone on Field's annual payment of the net proceeds of the farming operations. The mortgage fund is to secure the whole debt and not a part only. The debt is the main and principal thing to be regarded; the land mortgaged is to pay the debt, the whole debt, an dnot a portion of it falling due by instalments. It mistook the annual net proceeds of the farm and mortgaged property for the fund which should or might arise on the sale of the mortgaged property on a judgment of foreclosure. The plain and obvious intention of the parties, if it can be ascertained from the instrument of writing evidencing the contract, must be carried out by the court.

"The first and fundamental rule of construction of a contract is to ascertain the meaning of the parties; and the second is to look at every clause and word of the instrument in which they have embodied their contract, to ascertain that meaning"—Ch. J. Shaw, in 15 Pick. 361; Hammond's Ex. v. Washington's Ex'rs, 1 How. (U. S.) 14—in 14 Curt. Dec. 478; Bach v. Proctor, Doug. 382; Dormer v. Knight, 1 Taunt. 417; 1 Term R. 703; 2 Kent's Com. s. p. 552, t. p. 727, and cases cited; Kimmell v. Willard, 1 Doug. (Mich.) 217; Mussina v. Bartlett, 8 Port. (Ala.) 277; Hall v. Bamber, 10 Paige, 297; Pow. Cont. 389–90. It is a well known maxim of law, that *benigne faciendæ sunt interpretationes chartarum, ut res magis valcat quam pereat;* another maxim,

that *verba intentioni, et non e contra debent inservire.* The maxim *qui prior est tempore, potior est jure,* is never applied to the claims of one and the same actor; there must be two or more. It was never applied to the same plaintiff who had two claims, an elder and a junior claim, against one common fund. *Vigilantibus, non dormientibus, leges subserviunt,* implies two or more actors, not one. The maxim when not properly applied may well mislead; so may the one of "prior in time, stronger in right."

We think the weight of authorities is most decidedly in favor, in a case like the present, of dividing the fund arising from the sale of the mortgaged property among the owners of the different notes due as instalments, secured by the mortgage as different times, *pro rata.* We cite with confidence the following authorities, and most respectfully ask the court to review the decision in Mitchell v. Ladew et als., in 36 Mo. 526. [Counsel cited the same cases presented in briefs of counsel in that case.]

*W. Adams,* for defendants in error.

I. The only material point presented by this record is the question of priority in the payment of the notes out of the proceeds of the mortgaged property; but this question is settled by the express terms of the mortgage itself giving to the notes priority in the order in which they fell due. It was the intention of all the parties that this should be the case. By the terms of the original contract of sale and the contract of extension, the leading idea was that the notes should be paid in the order of their respective maturities. Chiles, the original holder of the notes, at the time he assigned to the plaintiff his note, notified him of their priorities, and promised him to procure a mortgage with the priorities here referred to; and this was the construction given to this mortgage by Chiles, Field, and by the plaintiff himself. The construction given by the parties to their own instruments is the proper guide to their meaning—25 Mo. 21; 1 Strobh. 479; 2 Watts & S. 175.

The mortgage admits of but one construction, and that is that the notes were a lien and held priority in the order in which they fell due.

II. When several notes falling due at different times, as in this case, are secured by a mortgage as a mere matter of law, when nothing is said in the mortgage about priority, they have priority, and must be paid out of the proceeds of the mortgaged property in the order in which they fall due— Mitchell v. Ladew et als., 36 Mo. 526, and cases cited.

HOLMES, Judge, delivered the opinion of the court.

The material question submitted for decision in this case is whether the proceeds of the sale, under the decree of foreclosure of the mortgage, are to be applied to the payment of the several notes in the order in which they became due, or are to be distributed *pro rata*. This question was decided in the case of Mitchell v. Ladew, 36 Mo. 526, upon a full consideration of the authorities. We have been asked to review that decision, and the matter has been re-argued with much learning and ability; but we see no good ground, on principle or authority, for departing from the conclusion then arrived at.

In this case, indeed, we may take the question to have been settled by the express agreement of the parties as contained in the terms of the mortgage itself. It reads thus: "It is expressly understood, also, that said notes are to be a lien upon and satisfied out of the proceeds of said land and property in the order in which they are or may become due, those becoming due first to be paid in preference and before the others." It is true that the other provisions of the mortgage, as well as of the previous contracts of the parties, speak of the profits or proceeds of the farming operations, and provide that, if such profits shall be paid every year upon the notes, to be applied in the order in which they became due, the time of the payment of the notes shall be extended. The parties evidently contemplated that the notes would be

thus finally paid off out of the profits to be made on the farming operations; and it is altogether probable, as insisted on by the defendants, that the word "proceeds" in the above cited clause referred to such profits. But it was also contemplated that in case the notes should not be paid in that manner, they were to be satisfied by a sale of the mortgaged property. The language used in this clause is broad enough to include both the profits of the farm and the proceeds of such sale, and it must have been intended that the notes should be paid in the one way or the other; and in either case they were to be paid in the order in which they became due. The main purpose of this clause would seem to have been to make an express agreement that the notes first becoming due should be paid in preference and before the others, without regard to the mode in which they should be paid. This was the important thing for both parties in reference to the interest. Such seems to have been the construction given to the mortgage in the court below, and in this view we entirely concur. It follows that there was no error in the decree that was rendered.

With regard to the deposition of John H. Chiles, the assignee of the notes which were the subject of the suit, we find no substantial error in the ruling of the court below. The material parts of the testimony which was admitted related to facts occurring at the time of the assignment, or afterwards. There was nothing in it which concerned the execution or validity of the instruments. The parts excluded may be regarded as wholly immaterial to the decision of the case.

Judgment affirmed. Judge Wagner concurs; Judge Lovelace absent.