ABBY J. LOCKROW v. THOMAS B. CLINE *et al.*
No. 147.

1. NOTE AND MORTGAGE — *Construction — Negotiability.*   Where a bond which is otherwise negotiable in specific terms makes a mortgage deed which was given to secure its payment a part of that contract, *held*, that each and every condition, provision and stipulation contained in said mortgage deed thereby became a part of said bond to the same extent that it would have been had the same been written in full upon the face of said instrument; and where said mortgage deed contains any promise or stipulation which, if inserted in the bond, would render it non-negotiable, such will be the legal effect of that clause which makes the mortgage deed a part of the contract.

2. —————— *Assignment — Notice — Payment.*   Where the assignee of a non-negotiable instrument fails to give notice of such assignment to the party to whom he looks for payment, a payment made to the original payee, without notice of the assignment by the maker, will be a satisfaction of his liability.

MEMORANDUM.— Error from Lincoln district court; W. G. EASTLAND, judge.   Action by Thomas B. Cline against Abby J. Lockrow and others to cancel and release of record a real-estate mortgage.   Judgment for plaintiff.   Defendant, Lockrow, brings the case to this court.   Affirmed.   The opinion herein, filed October 17, 1896, states the material facts.

*W. E. Saum, John E. Hessin,* and *E. A. McFarland,* for plaintiff in error.

*C. B. Daughters,* for defendants in error.

The opinion of the court was delivered by

CLARK, J. :   On October 1, 1886, the Western Farm Mortgage Company, of Lawrence, a corporation organized and doing business under the laws of Kansas, loaned to Thomas V. Malone and wife $1,000, and accepted as evidence of such indebtedness their real-estate coupon bond for $1,000, payable to the order of

one W. J. Neill, at the Third National Bank in the city of New York, on the '1st day of October, 1891, bearing interest at the rate of 7 per cent. per annum, payable semiannually. To secure payment of this bond, Malone and wife executed in favor of Neill a mortgage deed on 80 acres of land in Lincoln county. This bond recited that it was given for an actual loan of $1,000, and that said loan was secured by a mortgage deed on real ·estate duly recorded, and also contained this clause : "To which said deed reference is hereby made, and which is made a part of this contract." Thomas B. Cline subsequently became the owner of this real estate, by a conveyance thereof from one John A. Shannon, a grantee of George Green, to whom Malone and wife had conveyed the same. By ·the terms of the deed from Shannon to Cline, the latter assumed payment of this mortgage. Cline paid several installments of interest, and finally, on October 1, 1891, he remitted by bank draft the entire amount then due on the bond and mortgage, being the principal sum and interest thereon, amounting in all to $1,097.70. All of these payments and remittances were made by Cline to the mortgage company which made the loan originally, although the name of the company had changed to the Western Farm Mortgage Trust Company, of Denver.

In March, 1887, Neill transferred and assigned the bond and mortgage to one J..H. Pratt, and by successive assignments the same were transferred from Pratt to J. B. Burgess, and from Burgess to Abby J. Lockrow, the plaintiff in error herein, the last assignment having been made January 21, 1889. The trust company retained the $1,097.70 remitted to it by Cline and failed to forward the same to the then owner and holder of the bond and mortgage, Abby J. Lockrow,

and on July 26, 1892, Cline commenced an action in the district court of Lincoln county against Neill, Pratt, Burgess and Lockrow to secure a cancellation and release of this mortgage. Lockrow answered, alleging her ownership of the bond and mortgage ; that the same were unpaid, and asked for a personal judgment against Malone and wife, who were on her motion subsequently made parties defendant, and against the plaintiff, Cline, upon his assumption of the mortgage indebtedness as set out in the deed from Shannon to him. The trial resulted in a verdict and judgment in favor of the plaintiff as prayed for in his petition, and Abby J. Lockrow seeks a reversal of that judgment.

The jury returned the following special findings of fact :

" 1. Did the mortgagee, W. J. Neill, have any interest in the note and mortgage in controversy other than nominal? Ans. He did not.

" 2. Was the Western Farm Mortgage Company the real owner of the note and mortgage in controversy at the time of their execution and delivery? A. It was.

" 3. Did the Western Farm Mortgage Company quit business about November, 1887? A. It did.

" 4. Did the Western Farm Mortgage Trust Company of Lawrence, Kansas, and Denver, Colo., purchase the assets of the Western Farm Mortgage Company about November, 1887 ? A. Part of them.

" 5. Did the plaintiff continually, from 1888, pay all the interest coupons on the note in controversy to the Western Farm Mortgage Trust Company at Denver, Colo.? A. He did.

" 6. Did the plaintiff pay to the Western Farm Mortgage Trust Company the interest and principal in full after due ? A. He did.

" 7. Did the plaintiff have any knowledge or notice of the interest claimed by defendant, Lockrow, before

the payment to the Western Farm Mortgage Trust Company?  A.  He did not.

" 8.  Did plaintiff pay the note and mortgage in controversy to the Western Farm Mortgage Trust Company in good faith, believing the company had the right to collect same ?  A.  He did.

" 9.  Did defendant, Abby J. Lockrow, sell ·the coupons detached while she was the owner to the banks where she received payment, or did she place them in the possession of the banks only for collection ?  A.  For collection only.

" 10.  Did Cline, at the time he forwarded the money to the Western Farm Mortgage Trust Company, at Denver, Colo., believe and suppose that said company was owner and holder of the note executed by Malone and wife?  A.  He did.

" 11.  What acts, if any, did Abby J. Lockrow do or authorize to be done for her prior to October 13, 1891, in direction of the collection of· the coupons upon said bond or the collection of said principal bond?  A.  She did nothing.

" 12.  Where was the principal note and mortgage kept and held ; that is, in whose possession were they on October 13, 1891?  A.  In Abby J. Lockrow's possession."

The jury further specially found that Cline paid the note and mortgage to the original owner and holder thereof ; that he did not examine the records at any time to ascertain where the mortgage was payable ; that he did ·not know at the time he sent his last payment to Denver that Neill was not the real mortgagee ; that Abby J. Lockrow was the owner and holder of the note and mortgage at the time Cline made his final payment ; that she had possession of and control over the note and mortgage at all times. after she bought them in 1889, and had no correspondence either with Neill or the Western Farm Mortgage Trust Company about the payment of interest or prin

cipal, and that she never authorized either of them to collect any interest or the principal on the note and mortgage in controversy.

The plaintiff in error contends that under these special findings of fact the payment by Cline to the trust company of $1,097.70, on October 13, 1891, being unauthorized by her, did not in law amount to a satisfaction of the indebtedness, and that she was entitled to a personal judgment against the defendants in error for an amount equal to the face of the bond, and interest thereon from April 1, 1891, and a decree foreclosing her mortgage, notwithstanding the general verdict of the jury in favor of the plaintiff below.

We think the proper determination of this controversy hinges upon the question as to whether or not this bond was a negotiable instrument. If it was such an instrument, then the plaintiff in error was entitled to a judgment in her favor and a decree foreclosing her mortgage. This bond contains the stipulations usually found in real-estate mortgage bonds or notes, but differs from many of them in that it refers to the mortgage deed securing the payment of the bond, and makes the same a part thereof. By doing so each and every condition, provision and stipulation in the mortgage deed becomes as much a part of the bond as it would were it written upon and embodied in the same instrument; and if the mortgage deed contains any provision or stipulation which, if inserted in the bond, would render it a non-negotiable instrument, such must be the legal effect of that clause which refers specifically to the mortgage deed making it a part of the contract.

In this mortgage, Malone and wife covenanted that at the delivery thereof they were the lawful owners of the premises thereby granted, and that they were

seized of a good and indefeasible estate of inheritance therein, free and clear of all incumbrances, and that they would warrant and defend the same in the quiet and peaceable possession of the mortgagee, his heirs and assigns forever, against the lawful claims of all persons whomsoever. It also contains an agreement that the makers thereof should pay all taxes and assessments levied against the premises when the same should become due, and if not so paid, that the mortgagee or the legal holder of the mortgage might, without notice, either declare the whole sum of money secured thereby at once due and payable, or he might elect to pay the taxes, and in case of such payment, the amount thereof should be a lien on the premises and secured by the mortgage, and collected in the same manner as the principal debt. The makers of the mortgage also therein agreed to keep all buildings, fences and other improvements upon the premises in as good repair and condition as the same were at the time the mortgage was executed, and abstain from the commission of strip or waste on the premises until the whole sum thereby secured should be fully paid. The mortgage further provides, that in case of default in the payment of any sum as specified in the bond, or in case of the breach of any of the agreements or conditions contained in the mortgage, the bond and accrued interest thereon, and any money which may have been advanced by the mortgagee, should at his election become at once due and payable, and the mortgagee should at once be entitled to the possession of the mortgaged real estate, and have and receive all the rents and profits thereof.

In *Killam v. Schoeps*, 26 Kan. 310, the supreme court held that an instrument which contained a contract in respect to the title to property, and for the

possession thereof, rendered the instrument something more than a simple promise to pay money ; and BRÉWER, J., said in the opinion :

"There might as well be included in one agreement a contract for the lease of real estate, or for the hiring of chattels, or the performance of labor, with an absolute promise to pay a sum certain at a certain time, and then affirm that by reason of this absolute promise the entire contract is a negotiable instrument. This is not the law. Doubtless many of the rules respecting negotiable paper are purely arbitrary, but nevertheless they are well settled, and ought to be rigorously enforced. Among those rules is that of the unity of the contract, the singleness of the promise to pay, and we think no departure should be made from the spirit or letter of those rules. We conclude, then, that whenever any stipulation concerning other matters than the payment of money is incorporated in one instrument with a promise to pay money, such double contract will not be adjudged a negotiable paper."

In *Iron Works v. Paddock*, 37 Kan, 510, it was held, that where a note contained a provision that if it was not paid at maturity the payee might take possession of and sell the property for the payment of which the note was given, it contained other provisions than for the unconditional payment of money and was non-negotiable. Under these decisions, we must hold that the bond in controversy is a non-negotiable instrument.

What then were the respective rights and duties of the assignee of the bond and of the purchaser of the the equity of redemption? We answer that they were in all respects similar to those of the assignee of any other chose in action, and the party liable for the satisfaction thereof, respectively. The assignee should give notice of the assignment to the party to whom he

looks for payment, as a payment to the original promisee of a non-negotiable instrument without notice of the assignment would, in law, be deemed a satisfaction of the liability.   In Jones on Mortgages, § 956, it is said that, "if the mortgage be over-due at the time of the assignment, the mortgagor may be protected in making payment to the mortgagee, until he has received notice of the assignment of the mortgage."   In 1 Parsons on Contracts, 5th ed., p. 227, it is said that

"the debtor may make all defenses which he might have made if the suit were for the benefit of the assignor, as well as in his name, provided these defenses rest upon honest transactions which took place between the debtor and the assignor before the assignment, or after the assignment *before the debtor had knowledge or notice of it.*"

Mr. Neill, at the date of the execution of the mortgage, was a clerk in the office of the Western Farm Mortgage Company, and afterward held a similar position with the trust company, but he had no interest whatever in this bond or the mortgage given to secure its payment.   The trust company sent to Cline regular notices of the dates when the interest and principal would respectively mature, and therein directed that payment should be made to it.   The final payment by Cline was, as the jury specially found, forwarded to the trust company through the Western Farm Mortgage Company, the latter being the real party in interest at the date of the execution of the bond.   The evidence shows that the draft by means of which this remittance was made was drawn payable to the Western Farm Mortgage Company, and was by it indorsed in blank.   Cline had no notice, either actual or constructive, that this bond belonged to any one other than the mortgage company.

Lockrow v. Cline.

assignee of a mortgage, as a practical matter, should always give notice of the assignment to the holder of the equity of redemption, so as to surely protect himself against payments which may be made in good faith to the assignor." (Jones, Mortg. § 791.) All prior payments of interest had been made to the trust company, and in due time thereafter the interest coupons were returned to Cline by that company. We think the jury were warranted in finding that Cline acted in perfect good faith in this transaction, and that in consequence thereof he was entitled to a verdict and judgment canceling the mortgage.

It appears from the record that, although in the deed of conveyance from Shannon to Cline the latter assumed the payment of this mortgage, Shannon himself was under no liability to pay that indebtedness, as he had in no way assumed its payment; hence, under the decision in *Morris v. Mix*, ante, p. 654, recently decided by this court, neither the mortgagee nor his assignee could recover from Cline by virtue of his agreement with Shannon to pay the mortgage.

As we discover in the record no error prejudicial to the rights of the plaintiff in error, the judgment of the trial court will be affirmed.

All the Judges concurring.