C. C. Chapman v. John Steiner and Frances Steiner.

No. 157.

1. Promissory Note—*conditions in mortgage securing, made part of, by reference, not negotiable.* Where a note, otherwise negotiable in form, contains the following clause: "In case of the breach of any of the covenants or conditions in the mortgage deed securing this bond contained, to which said deed reference is hereby made and which is made a part of this contract, in either such case the said principal sum with all accrued interest shall at the election of the legal holder or holders hereof at once become due and payable without further notice, and may be demanded and collected, anything herein contained to the contrary notwithstanding;" *held*, that this clause renders the note a non-negotiable instrument.

CHAPMAN v. STEINER. 327

March 22, 1897.    Opinion.    McElroy, J.    C. Div.

2. ———— *payment of non-negotiable, to original payee, without notice of assignment, satisfies.* Where the maker of a non-negotiable instrument, in good faith pays the same to the payee named therein, without notice that the same has been assigned to other parties, and believing that the payee is entitled to collect the same, such payment is an extinguishment of the indebtedness.

Error from Ellsworth District Court.  Hon. W. G. Eastland, Judge.  Opinion filed March 22, 1897.  *Affirmed.*

*Wheeler & Switzer*, for plaintiff in error.
*Ira E. Lloyd*, for defendants in error.

McElroy, J.  On the second day of August, 1886, the Western Farm Mortgage Company, of Lawrence, a corporation organized and doing business under the laws of the State of Kansas, loaned to John Steiner and Frances Steiner the sum of five hundred dollars, and accepted as evidence of such indebtedness their real estate coupon bond, payable to the order of one W. J. Neill, at the Third National Bank in the city of New York, on the first day of August, 1891.

On the same day the defendants in error executed and delivered to the said W. J. Neill their mortgage deed, by which, to secure said note together with the interest thereon, they conveyed to the said W. J. Neill certain real estate located in Ellsworth County, Kansas.  About January 29, 1887, W. J. Neill assigned and delivered said bond to the plaintiff in error.

Steiner paid the several installments of interest, and finally, on about the first day of August, 1892, he remitted by bank draft the entire amount then due on the bond and mortgage, being the principal sum and interest thereon, amounting in the aggregate to $522.50.  All of these payments and remittances were made by Steiner to the mortgage company which

made the loan originally, although the name of the company had been changed to the Western Farm Mortgage Trust Company, of Denver. After the maturity of said note, and on the thirteenth day of February, 1893, the plaintiff in error brought this action in the District Court to recover from the defendants in error upon said promissory note, and to foreclose the mortgage securing the same. To the petition the defendants in error filed an answer, alleging as a defense substantially as follows:

That the loan evidenced by said note was negotiated by the Western Farm Mortgage Company, a corporation at Lawrence, Kan.; that, while the note was executed to W. J. Neill as payee, the Western Farm Mortgage Company was the real party in interest, and that the said W. J. Neill had no interest therein except as the agent and representative of the Western Farm Mortgage Company; that the Western Farm Mortgage Trust Company, was, after the negotiation of said loan, organized for the purpose of succeeding to the business of the Western Farm Mortgage Company; that the defendants in error had no notice, actual or constructive, of the transfer and sale of the note, by said W. J. Neill of the Western Farm Mortgage Company, to the plaintiff in error; that after the execution of the note and mortgage defendants in error paid the interest, as it became due, either to the Western Farm Mortgage Company or to the Western Farm Mortgage Trust Company, its successors, and at the maturity of the note paid the principal to the Western Farm Mortgage Trust Company at its office in Denver, Colo.; that at the time the note was paid to the Western Farm Mortgage Trust Company at Denver, Colo., the company was acting as the duly authorized agent of the plaintiff in error for the collection of the same.

To this answer the plaintiff in error filed a reply admitting the negotiation of the loan by the Western Farm Mortgage Company, and the organization and succession in business of the Western Farm Mortgage Trust Company, and also admitting the payment by the defendants in error of the several interest coupons to the Western Farm Mortgage Company and the Western Farm Mortgage Trust Company; but denying the agency or authority of either of said companies to collect the interest or the principal for the plaintiff in error; that he had no knowledge of the fact that W. J. Neill was not the real payee in the said note, or of the relation existing between the Western Farm Mortgage Company and the Western Farm Mortgage Trust Company, or of the fact that the defendants in error had paid either interest or principal as alleged in their answer to the Western Farm Mortgage Company, or the Western Farm Mortgage Trust Company; that the interest coupons and the principal note were made payable by their express terms at the Third National Bank of New York City; that the interest coupons were paid in due course of business through the said Third National Bank of New York City, where they were made payable; and that the plaintiff in error had nothing to do with W. J. Neill, the Western Farm Mortgage Company, or the Western Farm Mortgage Trust Company in the way of receiving interest or principal upon said note after it was delivered to him.

Upon the issues as thus formed the case was tried and the facts disclosed upon the trial are as follows:

That the mortgage and note were executed as alleged in the plaintiffs petition; that the note was assigned as follows: "For value received, I hereby assign and transfer the within bond, together with

330 CHAPMAN v. STEINER.

N. Dept. Opinion. McElroy, J. 5 Kan. App.

all my rights, title and interest in the mortgage deed securing the same to ——————,'' and was then delivered to the plaintiff in error on or about January 29, 1887; that the loan evidenced by said note was negotiated by the Western Farm Mortgage Company, and that W. J. Neill was simply a nominal party as payee therein, and acted simply as the agent or representative of the Western Farm Mortgage Company; that the Western Farm Mortgage Trust Company was organized for the purpose of succeeding to the business of the Western Farm Mortgage Company; that the defendants in error paid the several interest installments as they became due, to the Western Farm Mortgage Company and its successor, the Western Farm Mortgage Trust Company; that there was no assignment of the mortgage, sued on in this action, recorded in the office of the register of deeds of Ellsworth County, Kansas; that on July 20, 1891, and before the defendants in error had notice that the note and mortgage had been transferred to the plaintiff in error, said defendants, Steiner, paid the amount due thereon in full, $522.50, to the Western Farm Mortgage Trust Company, of Denver; and that said company retained the principal amount of said note, the five hundred dollars remitted to it by Steiner, and failed and neglected to forward the same to the then owner and holder of the bond and mortgage, C. C. Chapman.

The case was submitted to the jury upon the admissions of the parties and the evidence, under the instructions of the court, and the jury returned a general verdict in favor of the defendants in error, and certain special findings of fact. The plaintiff in error duly filed his motion for judgment upon the special findings of fact and also his motion for a new trial, both of which were overruled by the court, the rulings ex-

CHAPMAN v. STEINER. 331

March 22, 1897.        Opinion.    McElroy, J.                C. Div.

cepted to by the plaintiff in error, and the case is here for review.

The questions to be considered here are :

I. Is the note sued on a negotiable instrument? It contains the following : ·

"It is further expressly agreed that in case of default in the payment of any installment of interest or any portion thereof, for the space of ten days after it becomes due and payable, or in case of the breach of any of the covenants or conditions in the mortgage deed securing this bond contained, to which said deed reference is hereby made and which is made a part of this contract, in either such case the said principal sum with accrued interest shall at the election of the legal holder or holders hereof at once become due and payable without further notice, and may be demanded and collected, anything herein contained to the contrary notwithstanding."

By this clause the mortgage is made a part of the bond, or note. By this reference each and every condition, provision or stipulation in the mortgage deed becomes as much a part of the bond as if the same was written therein, and it is necessary to examine the mortgage in order to ascertain what are really the provisions and conditions of the bond or note, for the reason that such mortgage is made a part of, and incorporated into, the bond or note by its terms.

In this mortgage the Steiners agree to pay all the taxes and assessments levied upon said premises when the same become due, and the insurance premiums for the amount of insurance therein specified ; and if they do not do so the legal holder of the mortgage may, without notice, declare the whole sum of money therein secured at once payable, or may elect to pay such taxes, assessments and insurance premiums, the amount so paid to become a lien on the premises, and be secured by the mortgage, and be collected in the

332          CHAPMAN v. STEINER.

N. Dept.          Opinion.  McElroy, J.          5 Kan. App.

same manner as the principal debt, together with interest at the rate of twelve per cent. per annum. But whether the legal holder of the mortgage elect to pay such taxes, assessments or insurance premiums or not, it is distinctly understood that the legal holder thereof may immediately cause the mortgage to be foreclosed, and shall be entitled to the immediate possession of the premises and the rents, issues and profits thereof. It also contains an agreement that the mortgagors will keep the buildings, fences and other improvements upon said premises in as good repair and condition as the same now are, and that said mortgagors will abstain from the commission of strip or waste on said premises until the whole sum of money thereby secured is fully paid. It also contains an agreement that, in case of the breach by the said mortgagors of any of the covenants or agreements contained in said mortgage, then the bond secured thereby shall bear interest at the rate of twelve per cent. from that date, that the conveyance shall become absolute, and that the mortgagee shall be entitled to the possession of the mortgaged premises and to have and receive the rents and profits thereof. It also contains covenants that at the delivery thereof the mortgagors were the lawful owners of the premises, that they were seized of a good and indefeasible estate of inheritance therein, free and clear of all incumbrance, and that they would forever warrant and defend the premises in the quiet and peaceable possession of the mortgagee, his heirs and assigns, against the lawful claims of all persons whomsoever.

In *Killam v. Schoeps* (26 Kan. 310), the Supreme Court held that an instrument, which contained a contract in respect to the title to personal property and for the possession thereof, was not a negotiable

CHAPMAN V. STEINER.            333

March 22, 1897.        Opinion.    McElroy, J.              .C. Div.

promissory note ; and Mr. Justice Brewer said in the
opinion :

"You may not incorporate with such a promise
stipulations and agreements as to other matters, and
then say that the absolute promise to pay money lifts
the contract into the region of negotiable paper.   This
is the general rule, and whatever exceptions there may
be, this is not one.   In Daniel on Negotiable Instru-
ments, vol. 1, sec. 59, the rule is thus stated : 'In
the sixth place, it is essential to the negotiability of
the bill or note, that it purport to be *only for the pay-
ment of money*.   Such at least may be stated to be the
general rule, for if any other agreement of a different
character be .engrafted upon it, it becomes a special
contract, clogged and involved with other matters,
and has been deemed to lose thereby its character as
a commercial instrument.'   .   .   .   We conclude, then,
that whenever any stipulation concerning other mat-
ters than the payment of money is incorporated in one
instrument with a promise to pay money, such double
contract will not be adjudged a negotiable paper."

In *Iron Works v. Paddock* (37 Kan. 510), it was held
that where a note contains other provisions than the
unconditional payment of money it is non-negotiable.

We hold that the bond in controversy is a non-ne-
gotiable instrument ; and that the court did not err in
so instructing the jury.

II.   Did the payment to the Western Farm Mortgage
Trust Company operate to discharge the defendants in
error from liability to the plaintiffs in error?

The payee, W. J. Neill, at the time of the execu-
tion of the mortgage, was a clerk in the office of the
Western Farm Mortgage Company, and afterwards
held the same position with the trust company ; he
had no interest whatever in this bond, or the mort-
gage given to secure its payment.   The Western
Farm Mortgage Trust Company was organized for
the purpose of succeeding to the business of the

334    CHAPMAN v. STEINER.

N. Dept.    Opinion.  McElroy, J.    5 Kan. App.

former company, and· each of said companies directed Steiner to make his payment to the Denver company. The trust company, of Denver, regularly sent notices to Steiner of the date when his interest and principal would mature, and requested payment to be made to it. Steiner had no notice that the plaintiff in error owned, or claimed to own, any interest in the note and mortgage until long after he made the final payment. The assignment of the mortgage was not recorded, and Steiner had no notice of such assignment. He paid the money to the Farm Mortgage Trust Company, believing that such company was the owner of the note and mortgage. He had no notice that the bond and mortgage belonged to any one, other than the mortgage company. Steiner had made all his interest payments to this company, and in due time thereafter the interest coupons were returned to him by such company, marked "Paid."

"The payment of the bond by the mortgagor to the mortgagee, without notice of an unrecorded assignment, defeats the claim of the assignee, and entitles the mortgagor to its cancellation. . . . The mortgagor may pay or settle with a person having the apparent authority to receive satisfaction of the mortgage, and a payment thus made will prevail against one having a secret, concealed, and reserved interest in the mortgage. After the mortgagor has notice of the assignment, he cannot then deal lawfully with the mortgagee in making payment of the debt." *Pingrey on Mortgages*, § 1151.

In *Lockrow v. Cline* (4 Kan. App. 716), this court held that a note, the same in form as the one under consideration, was a non-negotiable note, and that payment of the same made to the Western Farm Mortgage Trust Company by Cline, without notice

CHAPMAN v. STEINER. 335

March 22, 1897.     Opinion.   McElroy, J.          C. Div.

of the assignment, was an extinguishment of the indebtedness.

Paragraph 3887 of the General Statutes of 1889, reads :

"The recording of the assignment of a mortgage shall not be deemed, of itself, notice to a mortgagor, his heirs or personal representatives, so as to invalidate any payment made by them, or either of them, to the mortgagee."

We think this section has reference to mortgages standing alone, or to a mortgage securing debts and notes of a non-negotiable character. In *Burhans v. Hutcheson* (25 Kan. 625), the Supreme Court, with reference to this section of the statute, says :

"A better interpretation, and one clearly more in accord with the law of mortgages in this State, is, that such section has reference only to a mortgage standing alone, or one securing debts and notes of a non-negotiable character. Under this interpretation, section 3 of the statute is not nugatory, but has ample room for operation."

We think that the jury were warranted in finding that Steiner acted in perfect good faith in the payment of this note and in consequence was entitled to the verdict, and that the findings and the verdict of the jury were in accordance with law and the evidence.

There was one instruction given by the court in this case, which, if examined alone, would seem to be misleading ; but this instruction, when examined in connection with the admissions of the parties at the trial and the undisputed evidence in the case, could not prejudice the rights of plaintiff in error. There was no pretense on the part of the plaintiff below that the defendants in error had notice of the assignment of the note in question to the plaintiff in error, and, there-

fore, the instruction could not prejudice the rights of the plaintiff in error.

As we discover in the record no error prejudicial to the rights of the plaintiff in error, the judgment of the trial court will be affirmed.