FARMERS' NAT. BANK OF TECUMSEH v. McCALL.

No. 358.   Opinion Filed January 18, 1910.

(106 Pac. 866.)

1. **BILLS AND NOTES—Negotiability of Note—Stipulation for Attorney Fee in Mortgage.** A note negotiable on its face does not become nonnegotiable on account of a stipulation in a mortgage securing the same providing for an attorney's fee in the event of foreclosure. ·

2. **ALTERATION OF INSTRUMENTS—Effect—Contracts in General.** The material alteration of a written contract intentionally made by a party entitled to any benefit under it or with his consent extinguishes all the executory obligations of the contract in his favor against all parties who do not consent to the act. Section 1141, Comp. Laws Okla. 1909.

3. **CHATTEL MORTGAGES — Security for Subsequent Note.** A note having been executed on November 8, 1905, by M., due at a given time, to B., in the sum of $550, secured by a chattel mortgage of that date, and later, on December 19, 1905, a note in the same amount by the same maker to the same payee being executed in order that the later note may be secured by the former chattel mortgage., it must appear that it was agreed by the parties thereto at the time of the execution of said note of December 19th that it should take the place of that of November 8th, and be secured by said chattel mortgage.

4. **BILLS AND NOTES—Security for Pre-existing Debt—Rights of Holder—Equities Between Original Parties.** The holder of a negotiable instrument as collateral security for a pre-existing indebtedness and an extension thereon retains the same unaffected by equities between the original parties of which it had no notice.

     (a)   The mortgage securing same is also unaffected by such equities.

5. **JURY—Right to Jury Trial—Waiver.** Plaintiff, and defendant in the trial court having each verbally moved for peremptory in-

structions, this did not constitute a waiver of the right to have a verdict returned by the jury.

(Syllabus by the Court.)

*Error from Pottawatomie County Court; E. D. Reasor; Judge.*

Action by the Farmers' National Bank of Tecumseh against J. W. McCall. Judgment for defendant, and plaintiff brings error. Reversed for new trial.

*B. B. Blakeney* and *J. H. Maxey, Jr.,* for plaintiff in error.— Citing: *Howry v. Eppinger,* 34 Mich. 29; *Fancourt v. Thorne,* 9 Q. B. 312; *First Nat. Bank v. Mining Co.* (Colo. App.) 68 Pac. 981; *Kiskadden v. Allen,* 7 Colo. 206; *Chicago, etc., Co. v. Merchants' Bank,* 136 U. S. 268; *Dobbins v. Oberman,* 17 Neb. 163; *Ernst v. Steckman,* 74 Pa. St. 13; *Wilson v. Campbell,* 110 Mich. 580; *First Nat. Bank v. Flath* (N. D.) 86 N. W. 867; *Hamilton v. Fowler,* 99 Fed. 18; *Frost v. Fisher* (Colo. App.) 58 Pac. 872; *Thorpe v. Mindeman,* 123 Wis. 149; *City Nat. Bank v. Goodlow, etc., Co.,* 93 Mo. App. 123; *Railway v. Bank,* 136 U. S. 268; *Carpenter v. Longan,* 16 Wall. 271; *Owings v. MacKenzie,* 133 Mo. 323; *Garnet v. Myers,* 65 Neb. 280, 94 N. W. 803; *Consterdine v. Moore,* 65 Neb. 291, 96 N. W. 102; *Allen v. Dunn,* 71 Neb. 831; *Pomroy v. Rice,* 16 Pick. 22; *Watkins v. Hill,* 8 Pick. 522; *Williams v. Starr,* 5 Wis. 534; *Jones v. N. Y. Guar. & Ins. Co.,* 101 U. S. 622; *Mullins v. Clark,* 13 Ky. 29; *Biglow v. Capen,* 145 Mass. 270; *McKinster v. Babcock,* 26 N. Y. 556; *Anderson v. Van Allen,* 12 Johns (N. Y.) 343; *Renton v. Monnier,* 77 Cal. 449; *Hackett v. Martin,* 8 Greenl. (Me.) 77; *Kahoon v. Morgan,* 38 Vt. 234; *Miller v. Larned,* 103 Ill. 562; *Mersick v. Alderman,* 77 Con. 634; *Dunn v. Weston,* 71 Me. 270; *Farrar v. N. Y. Bank,* 90 Ga. 331; *Thomas v. Brennan,* 104 Wis. 564; *Stauff v. Bingenheimer* (Wis.) 102 N. W. 694; *Pappitz v. Insurance Co.,* 85 Minn. 118; *Minahan v. Grand, etc., Co.,* 138 Fed. 37; *German Am. Bank v. Cunningham,* 89 N. Y. Supp. 836.

*A. B. Honnold,* for defendant in error.—Citing: *Richardson v. Fellner,* 9 Okla. 513; *Meyer v. Weber* (Cal.) 65 Pac. 1110; *Spesard v. Spesard* (Kan.) 88 Pac. 576; *Chick v. Willets,* 2 Kan. 377;

*Round v. Donnel,* 5 Kan. 54; *Muzzy v. Knight,* 8 Kan. 456; *Bank v. Peck,* 8 Kan. 663; *Meyer v. Graeber,* 19 Kan. 165; *Burnham v. Bank,* 92 Wis. 277; *Altoona Bank v. Dunn,* 151 Pa. St. 228; *Pitts v. Foglesong,* 37 Ohio St. 676; *Potts v. Mayer,* 74 N. Y. 594; *Comstock v. Hier,* 73 N. Y. 269; *Loewen v. Forsee,* 137 Mo. 29; *Keokuk Bank v. Hall,* 106 Iowa, 540; *Thompson v. Maddox,* 117 Ala. 468.

WILLIAMS, J. The following questions are raised by this record:

(1) Was the note of December 19, 1905, which is claimed to have been secured by the mortgage on the wagon and two mules, negotiable in character and entitled to all the privileges and exemptions of negotiable paper?

(2) Was there such an alteration as rendered the same void?

(3) Was said note of December 19th executed in lieu of the one of November 8th, and intended to be secured by the mortgage executed to secure the payment of the said note of November 8th?

(4) The plaintiff in error holding said note of December 19th as collateral security for pre-existing indebtedness and an extension thereon, is it a *bona fide* holder unaffected by equities between the original parties of which it had no notice?

(5) The plaintiff and defendant in the court below having verbally moved the court to direct a verdict in their favor, did this constitute a waiver of the right to have the jury return a verdict?

1. It was uniformly held by the Supreme Court of the territory of Oklahoma that a note containing a stipulation for the payment of an attorney's fee is not negotiable. *Randolph v. Hudson,* 12 Okla. 516, 74 Pac. 946; *Cotton et al. v. John Deere Plow Co.,* 14 Okla. 605, 78 Pac. 321. This rule has been adhered to by this court. *Clevenger v. Lewis,* 20 Okla. 837, 95 Pac. 230, 16 L. R. A. (N. S.) 410. The rule, however, has been changed by statute. which, however, does not apply to this case. See act of March 20, 1909 (Sess. Laws Okla. 1909, c. 24, art. 2, § 2, subd. 5, p. 389).

In the case at bar the note on its face is negotiable, but it

is insisted by the defendant in error that the mortgage securing payment of same provides for an attorney's fee in the event of foreclosure and that such provision also shall be construed as included in the note, thereby rendering it nonnegotiable.    There is a conflict of authority on this question.    The great weight seems, however to be against the contention of defendant in error, supporting the rule that a covenant or mortgage which is framed purely for the purpose of security and for enforcement of which resort could be had only to the property mortgaged and not a part of any debt by virtue of the note, but on account of the terms of the mortgage, the terms and conditions thereof being limited to providing security for the indebtedness, does not affect the negotiability of the note.    *Thorp v. Mindcman,* 123 Wis. 149, 101 N. W. 417, 68 L. R. A. 146, 107 Am. St. Rep. 1003; *Frost et al. v. Fisher et ux.,* 13 Colo. App. 322, 58 Pac. 872; *Morgan v. Martien,* 32 Mo. 438; *Mason v. Barnard et al.,* 36 Mo. 384; *Thompson v. Field et al.,* 38 Mo. 320; *Owings v. McKenzie et al.,* 133 Mo. 323, 33 S. W. 802, 40 L. R. A. 154; *Wilson v. Campbell,* 110 Mich. 580, 68 N. W. 278; 35 L. R. A. 544; *Ernest et al. v. Steckman,* 74 Pa. 13, 15 Am. Rep. 542; *Chicago Ry. Equipment Co. v. Mer. Nat. Bank,* 136 U. S. 268, 10 Sup. Ct. 999, 34 L. Ed. 349.

The highest courts of California, Michigan, Missouri, North Dakota, Pennsylvania, and Wisconsin have held that a stipulation in a note for an attorney's fee destroys its negotiability.    In the first state the court, basing its decision on a statute, also holds that such stipulation in a mortgage to secure a note negotiable on its face renders the same nonnegotiable. *Meyer v. Weber,* 133 Cal. 681, 65 Pac. 1110.    In this case, however, the decision was rendered by a divided court, four members supporting and three dissenting.    In Michigan, the adjudications are not in harmony.    In Missouri, North Dakota, Pennsylvania, and Wisconsin the governing rule is contrary to that of California, and harmonizes with the cases of *Thorp v. Mindeman* and *Frost et al. v. Fisher et ux., supra.* The Kansas decisions also seem to be in harmony with them.    However, when the provisions of the mortgage by direct stipulation in

the note are made a part thereof, the same in that event may be rendered nonnegotiable. But that is not now before the court. See *Lockrow v. Cline,* 4 Kan. App. 716, 46 Pac. 720; *Chapman v. Steiner,* 5 Kan. App. 326, 48 Pac. 607; *Wistrand v. Parker,* 7 Kan. App. 562, 52 Pac. 59.

The adjudications of the highest court in Nebraska also seem to be in accordance with the rule announced above as appearing to be supported by the weight of authority. *Garnett v. Meyers,* 65 Neb. 280, 94 N. W. 803; *Consterdine v. Moore,* 65 Neb. 291, 91 N. W. 399, 101 Am. St. Rep. 620; *Allen et al. v. Dunn et al.,* 71 Neb. 831, 99 N. W. 680. See, also, section 3598, Wilson's Rev. & Ann. St. Okla. 1903.

Eminent authority also supports the rule that a notation on the corner of a note may not render the same nonnegotiable. *Howry et al. v. Eppinger et al.,* 34 Mich. 29; *First Nat. Bank v. Mineral Farm Cons. Min. Co.,* 17 Colo. App. 452, 68 Pac. 981; *Chicago Ry. Equip. Co. v. Mer. Nat. Bank, supra.*

It is further insisted, however, that section 793, Wilson's Rev. & Ann. St. Okla. 1903, which provides, "Several contracts relating to the same matters, between the same parties, and made as parts of substantially one transaction, are to be taken together," concludes this question in favor of the defendant in error. This section was borrowed by the lawmakers of the territory of Oklahoma from the statutes of Dakota Territory. The same statute was retained in force in the state of North Dakota. In the case of *First National Bank of St. Thomas v. Flath,* 10 N. D. 281, 86 N. W. 867 (section 3900, Rev. Code N. D. 1899), this section was construed and held to constitute a rule of interpretation merely and united several contracts into a single contract only for such purposes, and that a real estate mortgage and the notes secured thereby did not constitute a single contract, but remained as separate contracts, except for the purposes of interpretation. No authority is cited by the defendant in error construing such provision otherwise. We necessarily conclude that the stipulation in the mortgage regarding attorney's fees does not render the note of Decem-

ber 19th nonnegotiable. It is also a well-supported rule that, if the note is negotiable, the mortgage securing the same shares the same immunity from defense, *First Nat. Bank of St. Thomas v. Flath*, 10 N. D. 281, 86 N. W. 867; *Carpenter v. Logan*, 18 Wall 271, 21 L. Ed. 313.

2. The defendant in error testified that the clause below his signature on the lower left-hand corner, to wit, "additional security, wagon and two mules," was not on said note when executed by him and was placed there without his authority or consent. The evidence on the part of the plaintiff in error was that such notation was on said note when received by it. As a general rule, the law presumes in favor of innocence, and that an alteration in an instrument is a legitimate part of it until the contrary appears, but there is a conflict of authority as to whether or not this rule extends to negotiable securities. The principle of the English cases. is that, where an alteration is so apparent on a bill or note as to raise a suspicion of doubt, it becomes incumbent on the plaintiff to prove that it is still available, and no burden rests on the defendant to disprove it. *Johnson v. Duke of Marlborough*, 2 Stark. Rep. 313; *Henman v. Dickinson*, 5 Bing. 183; *Bishop v. Chambre*, 3 C. & P. 55; *Leykariff v. Ashford*, 12 Moore, 281. There is an irreconcilable conflict in the American authorities. *McMicken v. Beauchamp*, 2 La. 290; *Hills v. Barnes*, 11 N. H. 395; *Commercial & R. R. Bank v. Lum*, 7 Haw. (Miss.) 414; *Warren v. Layton*, 3 Har. (Del.) 404; *Beaman v. Russell*, 20 Vt. 205, 49 Am. Dec. 775; *Davis v. Jenney*, 1 Metc. (Mass.) 221; *Bailey v. Taylor et al.*, 11 Conn. 531, 29 Am. Dec. 321; *Nat. Bank v. Franklin*, 20 Kan. 264; *Stoner v. Ellis*, 6 Ind. 152; *Paramore v. Lindsey et al.*, 63 Mo. 63; *White v. Hass*, 32 Ala. 430, 70 Am. Dec. 548; *Hunt v. Gray*, 35 N. J. Law, 227, 10 Am. Rep. 232; *Hayden v. Goodnow*, 39 Conn. 164; *Gooch v. Bryant*, 1 Shep. (Me.) 386; *Crabtree v. Clark et al.*, 7 Shep. (Me.) 337; *Neil v. Case & Co.*, 25 Kan. 510, 37 Am. Rep. 259; *Davis v. Carlisle*, 6 Ala. 707; *Sayre v. Reynolds*, 5 N. J. Law, 737; *Wilson v. Hayes*, 40 Minn. 531, 42 N. W. 467, 4 L. R. A. 196, 12 Am. St. Rep. 754. It is not essential, however, in

this case to determine what rule shall govern this jurisdiction, for the alteration on the left-hand corner is not such an alteration or addition as on the face of the note would raise a suspicion of its purity. It is not in conflict with any of the terms of the note, and the only effect it would have would be to evidence the fact that it was the intention and purpose in executing this note that the same should be secured by the mortgage executed to secure the note of November 8th.

The question arises, then, as to whether or not the adding of such a provision after its execution without the knowledge or consent of the maker amounted to such an alteration as to invalidate the same. If it was placed on said note with a view of its being made a part thereof so as to evidence the fact that the note was made in lieu of the one of November 8th, and intended to be secured by said mortgage, was it such a material alteration as to invalidate the same? Section 1141, Comp. Laws Okla. 1909. See *Johnson v. Heagan*, 10 Shep. (Me.) 329; *Thornton v. Appleton*, 16 Shep. (Me.) 298; *Henning v. Werkheiser*, 8 Barr (Pa.) 518; *Wheelock v. Freeman*, 13 Pick. (Mass.) 164, 23 Am. Dec. 674; *Woodworth v. Bank of America*, 19 Johns. (N. Y.) 391, 10 Am. Dec. 239; *Bachellor v. Priest et al.*, 12 Pick. (Mass.) 399; *Hubbard v. Williamson*, 27 N. C. 397; *Burchfield v. Moore*, 77 Eng. Com. Law Rep. 682, (3 E. & B.) 683; *Brill v. Crick*, 1 M. & W. 232; *Sanders v. Bacon*, 8 J. R. 486; *Dewey v. Reed*, 40 Barb. (N. Y.) 16; *Nazo v. Fuller*, 24 Wen. (N. Y.) 374.

In the case of *Benedict et al. v. Cowden*, 49 N. Y. 396, 10 Am. Rep. 382, the court said:

"It is in all cases a question to be determined upon the circumstances whether a memorandum or indorsement upon a note or bill is intended as a part of the contract and a modification of the note or bill; or whether it is merely an earmark for the purpose of identification, and, when the latter is the character and purpose, it will not modify or affect the contract, as it is no part of it."

In the case of *Polo Mfg. Co. v. Parr et al.*, 8 Neb. 379, 1 N. W. 312, 30 Am. Rep. 830, the court said:

"The rule results from the principle that the construction of the note is to be gathered from the whole of it, as well from the words on the back as those on the face. Therefore a memorandum upon the back of the note, made by agreement of the parties before signing, will bind all the parties to it."

See, also, *Simpson v. Stackhouse,* 9 Barr. (Pa.) 186, 49 Am. Dec. 554; *Warrington v. Early,* 76 Eng. Com. Law 763.

The question as to the alteration of the note by the addition of the clause "additional security, a wagon and two mules," was one for the determination of the jury. If it was added after the execution of the note without the consent or knowledge of the maker with the fraudulent purpose of incorporating a provision in said note to cause the same to be secured by said mortgage, that would be such a material alteration as to invalidate same. On the contrary, if such a notation was merely placed there as a memorandum for reference, it would not affect the note in any way whatever. Under the entire record we believe this was a question for the jury.

3. The question as to whether or not the note of December 19th was executed in lieu of the one of November 8th, and to be secured by the mortgage of November 8th, or was intended to take the place of the note held by the Wanette State Bank, is also a question of fact in this case for the determination of the jury. *Hill v. Beebe,* 13 N. Y. 556; *McKinster v. Babcock,* 26 N. Y. 378; *Watkins v. Hill,* 8 Pick. (Mass.) 522; *Pomroy et ux. v. Rice,* 16 Pick. (Mass.) 22. It appears that only $5 was advanced on this note at the time it was received, it being held also as collateral for a pre-existing debt which was extended thereby, including $15 advanced on the note of November 8th. The statements made by the payee, Mrs. Blankenship, and her son, E. L. Gibson, to the cashier of the plaintiff in error bank as to what the defendant told them or either of them at the time the notes were executed, are clearly hearsay, and should not have been admitted for any purpose. Eliminate such evidence, and that remaining tends to show that at a certain time E. L. Gibson, the son of Mrs Blankenship, brought the note to the cashier of the

bank to negotiate, hypothecate, or place it as security for a pre-existing indebtedness. The cashier declined to take said note on the ground that it was nonnegotiable, but advised him that, if they would procure a note in lieu thereof that was negotiable, with a proper transfer of a certain school land lease, he would accommodate them. At a later date the note of December 19th, being presented to the cashier, was received by the bank. After said note matured, the cashier saw the defendant in error and demanded payment, when he stated that Mrs. Blankenship had misled him, but that he had the property covered by the mortgage, and did not want to be put to any cost. However, the defendant in error denies that he made such statements. It is not controverted that the note of November 8th, secured by the mortgage, was also held by the plaintiff in error at the time of this alleged conversation with the defendant. It may be that he was not advised as to his rights and defenses even against that note. It is not every layman that would know that such a note was nonnegotiable, or that his defense would avail against it when held by the bank. Even though the jury may have believed the statement of the cashier of the bank, they might also find that it was not a statement that conflicts with the defense in this case. However, when you consider the fact that the defendant in error executed these two notes with the understanding that they were to be placed in the plaintiff in error bank, and that afterwards he paid off the note at the Wanette State Bank relying upon the statement of Mrs. Blankenship and her son, E. L. Gibson, that they had the notes and mortgage at home and failed to take steps to be repossessed thereof and made no inquiry of the plaintiff in error relative thereto, these are circumstances that may be considered against the direct evidence on his part. If it is necessary for the court to weigh the evidence, and the facts and circumstances are such that reasonable minds disagree about, it has been time and again held by this court that it becomes a question of fact for the jury's determination.

4. It is next contended that, if the plaintiff in error held

said note as collateral security for a pre-existing indebtedness and an extension thereof, it was not a *bona fide* holder thereof. The decided weight of authority seems to be that on the transfer before maturity, by indorsement in writing, of a negotiable note to secure an antecedent debt, which has been extended on account of the placing of such collateral as security thereof, the indorsee thereof becomes a *bona fide* holder unaffected by equities between the original parties. *Swift v. Tyson,* 16 Pet. 1, 10 L. Ed. 865; *Brooklyn City & Newton R. R. Co. v. Nat. Bank,* 102 U. S. 14, 26 L. Ed. 61; *McCarty et al. v. Roots et al.,* 62 U. S. 432, 16 L. Ed. 162; *Goodman v. Simonds,* 61 U. S. 343, 15 L. Ed. 934; *Oates v. First Nat. Bank of Montgomery,* 100 U. S. 239, 25 L. Ed. 580; 1 Daniel on Negotiable Instruments (5th Ed.) § 829. In the case of *Loewen v. Forsee et al.,* 137 Mo. 29, 38 S. W. 712, 59 Am. St. Rep. 489, whilst the court holds to the contrary rule on account of the previous adjudications of the courts in that state, yet it admits that the decided weight of authority seems to be in accord with the rule above announced.

5. Counsel for defendant in error in his brief insists that, each party having asked for a peremptory instruction, it had the effect of taking the case out of the hands of the jury and leaving it to the court, and in that event, if it became necessary for the court to weigh conflicting evidence, that then the giving of the peremptory instruction in favor of the defendant in error was without error, and, in any event, the evidence was conflicting, and that this court will not disturb the finding of the court where there is conflict in the evidence. There are some authorities that support this contention, but we decline to follow the same.

Further, section 20 of article 7 of the Constitution of Oklahoma provides that "in all issues of fact joined in any court, all parties may waive the right to have the same determined by jury, in which case the finding of the judge upon the facts shall have the force and effect of a verdict by jury." In order to agree with the contention of the defendant in error, it would be necessary to conclude that the verbal moving by each side for a peremptory in-

struction was tantamount to a waving of the right of trial by a jury. Section 20, *supra,* is identical with section 13 of article 4 of the Constitution of North Carolina. In the case of *State ex rel. Armfield v. Brown et al.,* 70 N. C. 27, the court said:

"The right of jury trial here secured is not absolute, but *sub modo*—that is, upon all issues joined—the meaning of which term can only be ascertained outside of the Constitution, and in the legislation since, to secure the benefit of this provision of the Consitution. * * * There are three modes of waving a jury trial: (1) By default; (2) by written consent; and (3) by oral consent entered on the minutes of court. Supposing these modes of the waiver of a jury trial were not merely directory, but essential, it would yet seem that a reference, appearing of record, is the highest evidence of waiver, and cannot be questioned without impairing the value and the due order of judicial proceedings."

In the case of *Hahn v. Brinson,* 133 N. C. 7, 45 S. E. 359, the court said:

"It is provided by the Code that a jury trial may be waived by written consent, in person or by attorney, filed with the clerk, or by oral consent entered in the minutes, and that, when a jury trial is thus waived, the decision of the judge shall be filed with the clerk during the term of the court at which the trial takes place, * * * and as the requirements of the Code and of the rule of this court have not been complied with, we must hold that there was no agreement to waive a jury trial and consequently no consent to the rendition of judgment out of term because there is no legal evidence of the same."

The Supreme Court of North Carolina has never held under such provisions of the Constitution and the enforcing statutes thereto that a jury might be waived *dehors* the record. In the case of *Johnston et ux. v. Haynes,* 68 N. C. 509, where the written consent was neither filed nor any oral consent entered of record, it was held that it was too late to object in the Supreme Court that such consent had not been made, or did not appear of record. In numerous North Carolina cases it has been held that, where any paper or order of record reasonably showed consent either express or implied to waive a jury, the jury would be considered as waived. In this case there appears nothing of the

kind. Section 5808, Comp. Laws Okla. 1909, provides that "the trial by jury may be waived by the parties, in actions arising on contract, and with the assent of the court in other actions, in the following manner: By the consent of the party appearing when the other party fails to appear at the trial by himself or attorney. By written consent, in person or by attorney, filed with the clerk. By oral consent, in open court, entered on the journal." The moving for peremptory instruction by each side in this case cannot be fairly inferred to come within such rule. There is nothing of record in any way to show that it was the intention of the parties thereby to waive a jury.

The judgment of the lower court is reversed, with instructions to grant a new trial and proceed in accordance with this opinion.

All the Justices concur.