### James v. Holdam.

(Decided February 24, 1911.)

#### Appeal from Lincoln Circuit Court.

Where a deed as originally written, had in it the name of J. W. James, as grantee, but his name was erased, and the name of his wife, M. B. James, was written in the deed when he delivered it to the clerk for record, and he declared that the land belonged to his wife, the presumption is that the deed was altered before its delivery.

GEO. F. STONE, P. M. McROBERTS and JAMES S. PIRTLE for appellant.

EDELEN & DAVIS for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE HOBSON— Reversing.

J. W. James died intestate on February 25, 1906, without issue, and this suit was brought against his widow, Margaret B. James by his sisters and the children of a deceased brother, as his heirs at law, who alleged in their petition that on June 28, 1901, Catherine McAllister sold and conveyed to J. W. James a tract of land in Lincoln county, and that after she had delivered the deed to him, some person without right or authority fraudulently erased the name of J. W. James from the deed and substituted therefor the name of M. B. James; that James died the owner of the land. They prayed that the erasure in the deed be held void, and that they be adjudged the owners of the land, which was then in the possession of Margaret B. James. An answer was filed by Margaret B. James in which the allegations of the petition as to the mutilation of the deed were denied, and it was alleged that she was the owner of the land. Proof was taken and on final hearing, the circuit court entered a judgment in favor of the plaintiffs as prayed. Mrs. James appeals.

J. F. Holdam, who was one of the plaintiffs in the case, gave a deposition in which he testified that he drew the deed referred to; that it was drawn as a deed to J. W. James; that after he drew it it was signed by Mrs. McAllister, and then delivered by him to James. This is the sum of his evidence. The circuit court sustained the defendant's exceptions to this deposition on the ground that he was testifying for himself as to a transaction with the decedent. This was proper. James being dead can not testify as to what took place between him and Holdam, and Holdam can not testify for himself as to these matters. Holdam is not only a party to the action but is interested in the recovery, as his wife is a sister of James, and if she recovers the land, he will take an interest in it as her husband, if he survives her.

The only other evidence in the record is the testimony of the county clerk, who recorded the deed, and Mrs. James who was put on the stand by the plaintiffs. The county clerk testified that J. W. James brought the deed to him and ordered it recorded; that on the back of the deed the name of J. W. James appeared, but that on opening the deed, he found that the deed was made to M. B. James. This is all that he knows about the transaction. The sum of Mrs. James' evidence is that she was not present when the deed was executed, and did not see the deed until several months after her husband's death. Her testimony shows in substance that she had no personal knowledge as to how the deed was written or when or why or by whom any change was made in it. She also testified that her husband always told her that the place was hers; that he told her this from the time he bought the land, telling her to improve it all she wanted to as it was hers. The original deed itself has been brought up for our inspection. It shows on its face that as it was originally written, J. W. James was the grantee; that the letters "J. W." have been erased, and the letters "M. B." written in the place of them; it also shows in one place that the word "his" before the words "heirs and assigns" has been changed to "hers," and in another place the word "his" has been left unchanged. There is absolutely no proof in the record as to when or by whom the changes in the deed were made. It is very evident from all the proof that they were made before the deed was lodged with the county clerk for record; for the record in the county clerk's office corresponds with

the deed as it now appears. The law does not presume fraud; it does not presume in a case like this that a change was made in a written instrument without authority. The presumption in such cases is that all changes made in a written instrument were made before delivery, and the burden of proof to show fraud is on him who charges fraud. (Letcher v. Bates, 6 J. J. M., 526; Welch v. Chandler, 13 B. Mon., 420, 1 Greenleaf on Evidence, Sec. 564; N. W. Trust Co. v. Levtzow, 122 N. W., 600; Farmers Nat'l Bank v. McCall, 106 Pac., 866; Ernston v. Christianson, 123 N. W., 711.) The deed did not come from the possession of M. B. James. It was in the possession of J. W. James, and came out of his possession when delivered by him to the county clerk, in the condition it is now in. The plaintiffs sue as his heirs and stand in his shoes. It is evident that J. W. James knew that this land stood in his wife's name; he had the deed recorded in this condition, and lived five years thereafter, telling his wife that it was her land. Now that he is dead, the deed can not be assailed for fraud by his heirs at law who claim under him, merely because it appears on the face of the deed that alterations were made in it after it was first written. Under the proof the court should have dismissed the petition.

Judgment reversed and cause remanded for a judgment as above indicated.