## Bradley S. McCabe v. George Farnsworth and others.

*Practice in supreme court: Cross appeal.* Where a party in whose favor decree in the circuit is granted, wishes the decree modified in his favor, he must appeal notwithstanding the other party has appealed.

*Appeal in chancery: Parties.* A mortgagor against whom a decree in a foreclosure suit has been taken, making him personally liable for any balance, is not precluded from contesting the validity of the decree upon the merits on an appeal, by the fact that he has parted with his title to the mortgaged premises to one who has allowed the decree to be taken by default and failed to appeal.

Defendants against whom a decree for costs has been taken, may appeal from the decree.

*Mortgages: Estoppel.* Where a mortgagee, after having assigned the mortgage to his father, has dealt with the mortgagor and his grantees on the basis that he still held the mortgage, and the father has failed to give notice of the assignment and so conducted himself as to authorize them to believe that the son was the real owner of the mortgage, the father is estopped from denying the right or authority of the son, whether the money for which the mortgage was originally given was his or not.

*Mortgages: Payment.* The mortgagor and his grantees having deeded the mortgaged premises and other property to the mortgagee and others, in consideration of the mortgage debt and other debts, and taken back a contract to reconvey on certain conditions specified, the mortgage debt was held to be thereby satisfied and extinguished.

*Mortgages: Satisfaction: Revival: New agreement: Abandonment.* The mortgage debt having been thus paid and extinguished, it could only be revived as a lien on the property by, either a mutual rescission of the deed and contract, which would imply a reconveyance, so as to put all parties in *statu quo,* or a new subsequent agreement founded upon a new and sufficient consideration; and an abandonment of the contract merely, could not have that effect.

*Mortgages: Extinguishment: Revival: Subsequent agreement.* And if the mortgage debt were thus revived by a new and subsequent agreement, the obligation to pay and the lien would rest, not upon the old mortgage and note, but upon such new agreement, which would alone constitute the basis of the right to enforce payment or to foreclose.

*Equity pleading and practice: Evidence.* In any suit, therefore, either to enforce payment or to foreclose the lien, such new agreement, being the foundation of the right of action, must be pleaded; and evidence of such an agreement would not be competent under a foreclosure bill setting up and relying upon the original note and mortgage only.

Defendants to a foreclosure bill, by allowing the bill to be taken as confessed, admit nothing more than the case made by the bill, and not any new agreement relied upon, which appears in the proof only; and a defense made by those who answered, showing affirmatively the extinguishment of the mortgage constituting the only ground of relief set up in the bill, enures equally to the benefit of all the defendants.

Evidence of subsequent dealings between the mortgagee and those to whom, jointly with him, the mortgagor had conveyed the mortgaged premises in satisfaction of the mortgage debt, in reference to reviving the lien, is held incompetent under the bill in this case.

*Heard January 15. Decided April 15.*

Appeal in Chancery from Mason Circuit.

*R. W. Duncan* and *N. J. Emmons,* for complainant.

*Eben C. Smith* and *E. Mariner,* for defendants.

The defendants appealed from the decree, which was in favor of complainant; but the complainant being dissatisfied as to the rate of interest allowed by the decree, also appealed. During the argument the question was raised whether such cross appeal was necessary.

THE COURT held that when a party in whose favor a decree is granted, wishes the decree modified in his favor, he must appeal, notwithstanding the other party has appealed.

CHRISTIANCY, CH. J.

This was a bill filed in Mason county, March, 1863, to foreclose a mortgage dated September 26, 1848, executed in Wisconsin by the defendant, George Farnsworth, then of Racine, Wisconsin, to Harry R. Talmage of Milwaukee, upon a tract of land situated in Mason county, Michigan, including a saw-mill and other buildings thereon, to secure the

payment of a promissory note of one thousand five hundred dollars, executed by Farnsworth, payable to the order of said Harry R. Talmage at the city of Milwaukee on the first day of November, 1849. The mortgage was duly recorded October 24, 1848.

The bill alleges that the note and mortgage, though executed- to Harry R. Talmage of Milwaukee, were given for the purpose of securing a then existing indebtedness of Farnsworth to Harry Talmage of Greenville, Greene county, New York, who by the evidence appears to have been the father of said Harry R., which indebtedness is alleged to have accrued by way of money loaned to Farnsworth by said Harry Talmage; and that the note and mortgage were given for the sole use and benefit of said Harry Talmage; that on the 10th day of June, 1849, said Harry R. duly assigned and delivered said mortgage and note to said Harry by an assignment in writing which was afterwards, January 23, 1856, duly recorded; that said Harry Talmage, while being the owner of said note and mortgage, died in the forepart of the year 1855, intestate, and in the same year administrators (naming them) were duly appointed upon his estate, by the county judge of the county of Greene; that, as such administrators, they on the 10th day of November, 1862, at Greenville aforesaid, in consideration of four thousand and forty-two dollars, paid to them by the complainant, sold, assigned, and transferred said note and mortgage to him, together with the debt thereby secured, by an assignment duly executed and acknowledged; alleges that the sum due at the filing of the bill is the whole principal sum of one thousand five hundred dollars, with interest at the rate of twelve per cent. per annum, from the date of the mortgage.

The other defendants (except Farnsworth)' are made parties only by the general allegations that they " have or claim to have some interest in said mortgaged premises or in some part thereof' as purchasers, mortgagees, or otherwise."

In all other respects the bill is in the ordinary form of

a foreclosure bill, praying the usual decree for the payment of the amount due, or sale and foreclosure.

James Ludington alone answers the bill; but by stipulation the defendants, Farnsworth, John M. Loomis, H. Sidney Hayden, and George Ludington, against whom a *pro confesso* had been entered, were allowed to appear, and the answer of James Ludington allowed to stand also as their answer.

This answer admits the execution of the note and mortgage by Farnsworth to Harry R. Talmage, but denies that they were executed to secure any indebtedness of Farnsworth to said Harry Talmage, or for his sole use as alleged in the bill, and alleges upon information and belief, that the indebtedness, if any, for which the note and mortgage were given, was from Farnsworth to said Harry R.; states that defendants are ignorant whether the note and mortgage were assigned by said Harry R. to said Harry, or whether, if any, it was recorded; but avers that if such assignment was made, it was made secretly and kept concealed from the said Farnsworth, who never had any notice thereof; that defendants are ignorant whether said Harry died intestate, or whether administrators were appointed, or whether they sold and assigned the note and mortgage to complainant as alleged; but denies that said Harry Talmage, in 1855, owned the mortgage or had any interest in it; denies that there is due upon the note and mortgage fifteen hundred dollars and interest, or any other sum; alleges that these defendants are the owners in fee of the premises.

The answer then avers that on or about the 15th day of October, 1850, said Farnsworth and Merritt B. Atwater conveyed to said Harry R., then the owner and holder of said note and mortgage, and to Harry S. Durand and Israel Munson Hill the said mortgaged premises, together with a large amount of lands adjacent, in full satisfaction of said note and mortgage; and that said Harry R. then and there agreed to take and receive said conveyance as a full

and complete satisfaction and payment of the debt secured by said mortgage, among other debts, and agreed to satisfy and discharge the same, and did so take and receive the same in payment and satisfaction, and that said mortgage became thereby extinguished.

The other defendants, George W. Ford, Charles Mears, and John Baldwin, Jr., failing to appear and answer, the bill as to them was taken as confessed.

The case was heard in the court below upon the pleadings and proofs, and a decree in the usual form of foreclosure and sale granted against all the defendants, with costs, including a personal decree against Farnsworth for any balance which might remain due after the sale. From this decree the defendants, James Ludington, George Farnsworth, John M. Loomis, H. Sidney Hayden, and George Ludington have appealed.

With the exception of the general allegation that the defendants who answer are the owners in fee, there is nothing in any of the pleadings showing any interest of any of the defendants, except Farnsworth, in the mortgaged premises, or in the controversy.

The proofs show no such interest in any of the defendants (whether answering or not) except Farnsworth, the mortgagor, and George W. Ford, to whom the fee or equity of redemption of five-sixths of the mortgaged premises is traced, nor does any reason whatever appear why any of the other defendants were made parties.

It appears from the evidence that one-third of the mortgaged premises, after the execution of the mortgage, was conveyed by Farnsworth to Merritt R. Atwater and Ira Atwater; that Farnsworth, still owning one-third, and Merritt B. Atwater, one-sixth, conveyed by warranty deed (purporting to convey the whole) to Harry R. Talmage and to Harry S. Durand and Israel M. Hill (who seem to have been partners, known as Durand & Hill), taking back an agreement,—which deed and agreement will be more fully noticed hereafter. But Ira Atwater having died in the

meantime, his one-sixth of the mortgaged premises vested in his heirs, who did not convey, and in whom that interest still remains, so far as appears from the evidence. Harry R. Talmage afterwards conveyed his interest thus acquired, to Durand & Hill; and they afterwards conveyed to defendant, George W. Ford. Merritt B. Atwater also, about the same time, and Farnsworth the next year, quit-claimed to Ford all their respective interests, which, if any thing, consisted of their equities growing out of the contract of Harry R. Talmage and Durand and Hill. In this manner five-sixths of the fee or equity of redemption vested in Ford, leaving one-sixth outstanding in the heirs of Ira Atwater, who are not made parties, unless they are included among the defendants whose interests do not appear. No objection, however, is taken for want of parties, and if those heirs are not among the defendants, they will not be bound by any decree in the case.

A preliminary objection is taken by the counsel for the complainant that, as the equity of redemption is traced to Ford, and no interest of any of the other parties is shown to be affected by the decree, and he has allowed the bill to be taken as confessed, and has not appealed, the appeal ought to be dismissed, or at least, that the decree ought not to be disturbed at the instance of parties who show no interest affected by it. Doubtless such a decree of foreclosure might have been made as would have given great force to such an objection. But this decree is not merely for foreclosure of the mortgage and sale of the mortgaged premises; it makes Farnsworth, the mortgagor, personally liable for any balance of the mortgage debt and costs after the proceeds of sale have been applied, and awards execution therefor. He is, therefore, clearly entitled to contest the validity of the decree upon the merits. The decree also awards costs against all the defendants, and they are, therefore, interested in its reversal.

We must, then, examine the case upon its merits.

The complainant proved the assignment by Harry R. Talmage, of the note and mortgage, to Harry Talmage, June 10, 1849, the death of said Harry R., intestate, the appointment of administrators, and the assignment of the note and mortgage by them to complainant, at the respective dates stated in the bill.

The first and most important question upon the merits is, whether the conveyance made by Farnsworth, the mortgagor, and Meritt B. Atwater, to Harry R. Talmage, Harry S. Durand and Israel M. Hill, October 16, 1850, and the agreement of that date executed by the grantees to Farnsworth and Atwater, operate as a payment or extinguishment of the note and mortgage.

Farnsworth and Atwater were then, and had for some time been, engaged in carrying on the saw-mill upon the mortgaged premises, and in the lumber business connected with it, and much embarrassed with debts. They owed Durand & Hill (who seem to have been partners in business) a debt of some four thousand or five thousand dollars, and to Harry R. Talmage another debt, which, according to the testimony on the part of the complainant, amounted to one thousand dollars, and, according to that on the part of the defense, from five hundred to six hundred dollars, and Farnsworth owed this mortgage of one thousand five hundred dollars, with interest at twelve per cent. from its date, which was a lien upon the real estate conveyed by him and Atwater. And, though the money for which this note and mortgage were given may have been the money of Harry Talmage, the father, and the note and mortgage had been assigned by Harry R. to the father in 1849, yet these were, by the father's request and procurement, made directly to, and in the name of, Harry R., the son, under circumstances which fully justified Farnsworth in believing, and we are satisfied he did believe, that the money for which they were given was that of Harry R., and that he was in reality and in good faith the owner of them; and, though there is a slight conflict of evidence upon the point,

we are entirely satisfied that this was the belief of Farnsworth and Atwater, as well as of Durand & Hill, at the time of this conveyance and agreement; and that neither Farnsworth, nor Atwater, nor Durand & Hill, had any notice of the assignment of the note and mortgage to Harry Talmage, the father.    It was under these circumstances, with the several debts of Farnsworth and Atwater to Durand & Hill and to Harry R. Talmage, and this mortgage of Farnsworth to Harry R., which all the parties, except Harry R., at least, believed, and were authorized to believe, belonged to Harry R., that the conveyance of October 16th, 1850, and the accompanying agreement of that date, were made.

The deed is an ordinary warranty deed, purporting to convey the whole of the mortgaged premises, which contained two hundred and twenty-eight and sixty one-hundredths acres, with the mill and other buildings thereon, and *also three hundred and sixty-one and fifty-one one-hundredths acres of other lands in the same township (pine lands) not covered by the mortgage,* and which do not appear to have been incumbered.    And, though the deed recites a consideration of nine thousand dollars, all the testimony agrees that no consideration was given except the above mentioned indebtedness, whether including the mortgage or not, and all except that of Harry R. agrees that the mortgage was a part of this consideration, and even Harry R. himself says that Durand, who made the figures at the time, he presumes figured this in as a part of the indebtedness for which the deed was given, and understood it to be included; and the testimony is overwhelming and conclusive upon this point, and shows clearly that Farnsworth and Atwater and Durand & Hill so understood, and that Harry R. must have known they so understood it, and we are satisfied it was so treated afterwards between Harry R. and Durand & Hill in determining their respective interests in the property and the business of carrying on the mill and lumber business in accordance

with the agreement they had given Farnsworth and Atwater. And whatever interest Harry Talmage may have had, as between him and his son, his conduct in taking the mortgage in his son's name, and all his acts in reference to it, especially his neglect to give notice of its assignment, had been such as fully to authorize, not only Farnsworth, but Atwater and Durand & Hill, to treat his son as the real owner of the mortgage, and to deal with him as such; and for the purpose of determining the objects and effects of the conveyance and agreement in question, we must also treat him as the owner, and consider the several matters of indebtedness mentioned, including the mortgage debt, as the consideration of the deed.

Such being the consideration for the conveyance, had there been no accompanying agreement, we must, in the absence of any agreement showing a contrary intent, necessarily infer that the conveyance was taken in payment of the debts which constituted the consideration; since, if not taken as collateral to the debts, those debts could not be the consideration given by the grantees, and remain at the same time so much outstanding indebtedness.

The agreement itself is in the following words: "Whereas, Messrs. Farnsworth and Atwater, of Pere Marquette, Mason county, Michigan, have this day conveyed to us, the undersigned, certain real and personal estate situate at Pere Marquette aforesaid, and more particularly described in the deed of conveyance and the bill of sale; now it is understood between the parties that the said property has been conveyed to us *for a valuable consideration in the shape of a prior indebtedness by said Farnsworth and Atwater to us,* and it is further understood that we are to use, occupy and improve said property to the best advantage that our judgment may dictate, and dispose of all lumber or other commodities that may be produced therefrom, and keep an accurate account of all expenses and disbursements, together with all receipts and income therefrom. And it is further understood and agreed that whenever the net proceeds

arising from the said property shall amount to a sufficient sum to fully reimburse us for all claims and demands which we now hold against said Farnsworth and Atwater, with interest at twelve per cent., for which the said convey-ance was made, and we shall also be paid therefrom a fair and reasonable compensation for all advances, either in money or otherwise, and for such services as we may render, or obligations which we may assume, and be fully indemni-fied for all and all manner of debts or other liabilities which we may incur in the management of said property and the business connected therewith; we are then, at any time when desired by said Farnsworth and Atwater, to redeed and reconvey the real estate, which we may not but by their consent, or with their request, sooner dispose of, and also, the personal property that has not been used or disposed of in the conducting said business or sold for the mutual benefit of the parties.

"*And it is further understood that all debts or demands which may be due us or either of us from George Farnsworth or Merritt B. Atwater, are to be included in this obligation and to be paid before re-conveyance.* And it is further agreed that at any time when said real and personal property can be sold at good advantage, it may, with the consent of the parties interested, be sold, and any balance then due us and remaining unpaid is to be retained from the proceeds of said sale, and the remainder paid over to said Farnsworth and Atwater.

"Dated at Racine, Wis., Oct. 16, 1850."

(Signed) "DURAND & HILL,

H. R. TALMAGE."

It is manifest from this agreement that the conveyance of the property was not taken merely as a collateral secu-rity for the indebtedness, and at the risk of the grantors, that its use, or its use and sale, should pay the debt; but that the grantees assumed and undertook at their own risk to make that indebtedness out of the use of the property and business which they contracted to carry on in connec-

tion with it—or at most, out of such use and the proceeds of such sales of the property as Farnsworth and Atwater should be willing to assent to; but that they, Talmage, Durand & Hill, were not to be bound to reconvey until the proceeds of the use of the property and business—or, at most, these proceeds and the proceeds of the sale of a part of the property itself, to be made with the assent of Farnsworth and Atwater, should be sufficient to pay (and indemnify them for) all the indebtedness alluded to, together with a reasonable compensation for all their advances, and such services as they might render, and obligations as they might assume in the management of the property and business. In legal effect, the property was received in payment, with an undertaking on the part of the grantees to reconvey on the condition mentioned.

It is also clear, taking the deed and agreement together, that Talmage, Durand & Hill acquired thereby the absolute right to carry on the business and to use the property in the manner and for the purposes specified, and that Farnsworth and Atwater had no right, even by tendering the money for the full amount of such debts, the next day or at any subsequent time, to demand a reconveyance. We must, therefore, consider the effect of the contract, construing its language with reference to the conveyance and the subject matter, as a satisfaction and extinguishment of all the indebtedness (including the mortgage), in consideration of which the conveyance was made. And, though the note and mortgage were not delivered up, nor the mortgage released of record, they were no longer of any force or importance between the parties, except as they constituted to that extent a measurement of the amount to be realized by Talmage and Durand & Hill from the use and income of the property and business contemplated, or from these and the proceeds of such sales of part of the property, before they should be bound to reconvey.

The mortgage and note being thus in legal effect paid and extinguished, as between the mortgagee on the one side

and Farnsworth (the mortgagor) and Atwater and Durand & Hill on the other, could only be revived as a debt or as a lien upon the property, in one of two ways: *First*, by a mutual rescission of the whole arrangement, including the deed and contract, which would imply a reconveyance of the property to Farnsworth and Atwater, so as to place them in *statu quo;* or, *second*, by a new subsequent agreement founded upon a new and sufficient consideration, for it is idle to talk of an abandonment of the contract under such circumstances.

Now, it is not pretended or claimed that there was any reconveyance or any such rescission of the contract or arrangement made by the deed and the accompanying agreement, as to place the parties in *statu quo.* The only mode, therefore, in which the mortgage debt could be revived or the mortgage could become a lien upon the land as to any one, was by a new contract, based upon such new consideration as would be sufficient to sustain it as a new mortgage then given. And though such new contract should be express to pay the old note and mortgage, the obligation thus to pay and the lien upon the land would not rest upon the old note and mortgage, but would be one *created by,* and *resting upon,* the *new contract* so made; and this would constitute the basis of the right to enforce payment or foreclosure. And, therefore, whether operating as an agreement or covenant to pay, or merely by way of estoppel against denying the existence and force of the note and mortgage, it would equally, in an action at law to recover the money, or a bill to foreclose, upon all just principles of pleading, be made, by the declaration or the bill, the foundation of the plaintiff's or complainant's right.

If, therefore, the complainant relied upon any such new agreement or contract, he should have set it up in his bill, and based his right to the relief he asked upon it, so as to allow the defendants to answer it and take issue upon it.

Under a bill which only set up and relied upon the note and mortgage, the defendants had no reason to antici-

pate the proof of a new and separate agreement as the basis of complainant's rights, and which alone, instead of the note and mortgage, created the obligation he was seeking to enforce.

And, as the mortgage and note, constituting the only ground of claim or relief set up in the bill, are shown to have been paid and extinguished, the whole case made by the bill is met and defeated, as to all the defendants who have answered, and, as to those who did not answer, knowing the mortgage debt was thus paid, and that the mortgagors and others had answered and set up the payment, they had a right to rely upon the defense thus made. By allowing the bill to be taken as confessed against them, they admit nothing more than the case made by the bill, and not any new agreement set up and relied upon in the proof only.

And this admission is rendered of no avail by the defense made by Farnsworth, the mortgagor, showing affirmatively the extinguishment of the mortgage. This defense enures equally to the benefit of all parties deriving an interest in the premises, immediately or remotely, through the mortgagor, after the date of the mortgage, though they may have allowed the bill to be taken as confessed and have not appealed. The case did not warrant a decree against any of the parties under the present bill.—See *Buchoz v. Lecour, 9 Mich., 234.*

The complainant, under objection from the defendants, introduced evidence for the purpose of showing that when Harry R. Talmage conveyed to Durand & Hill, he reserved the mortgage and the right to foreclose the same, and extended the time one year, and that they assented to the same, and that after Durand & Hill had conveyed to Ford, the latter agreed in writing to pay the interest on the first of May, 1852, and to buy and pay for the mortgage in one year. He also introduced evidence tending to show that Farnsworth knew of, and assented to, the conveyance to Durand & Hill, though Farnsworth testifies that

hé knew nothing of the sale except from hearsay, and did not consent to the reservation by Talmage of the mortgage, and·there does not appear to be any satisfactory evidence that he did. There was also evidence tending to show that Farnsworth assented to the sale of Durand & Hill to Ford, though not to show that he knew of, or assented to, Ford's agreement with Talmage in reference to the mortgage. And it was also shown that both Farnsworth and Atwater separately quit-claimed to Ford, after his purchase from Durand & Hill, and that Farnsworth received from Ford from three hundred to six hundred dollars as a consideration for his quit-claim.

But we do not enter upon the consideration of any of this evidence, so far as it bears upon the question, whether there was or was not a contract or agreement by Durand & Hill, or Ford, or Farnsworth, or Atwater, to revive the mortgage, or to create a personal liability of any of the parties to pay it. Proof of any such agreement was objected to, and was clearly inadmissible under the pleadings.

The decree of the circuit court in chancery must be reversed and the bill dismissed, with costs in both courts.

The other Justices concurred.