NANCY WRIGHT v. J. J. SHIMEK *et al.*

**No. 310.**

MORTGAGES — *Unacknowledged Assignment* — *Notice* — *Payments to Mortgagee.* The syllabus in the case of *Chapman v. Steiner,* 5 Kan. App. 326, 48 Pac. 607, is adopted as the syllabus in this case.

Error from Republic district court; F. W. STURGES, judge.   Opinion filed October 13, 1898.   Reversed.

*S. B. Bradford, G. A. Huron,* and *J. F. Close,* for plaintiff in error.

*Angevine & Cubbison,* for defendants in error.

The opinion of the court was delivered by

McELROY, J. : This action was brought by Nancy Wright against Joseph J. Shimek, Barbab Shimek, Winzel Kasha, Vincel Kasha, the Mutual Benefit Life Insurance Company, and Bartlett Brothers. The plaintiff alleged : (1) That the defendants Joseph Shimek and Barbab Shimek, on May 1, 1886, executed and delivered to W. J. Neill a real-estate bond secured by mortgage on lands in Republic county, and thereby agreed to pay Neill, or order, $2200, on the 1st day of May, 1891, with interest at seven per cent. per annum, payable semiannually, according to the terms of ten coupons thereto attached ; (2) an assignment of the notes and mortgage by Neill to the plaintiff ; (3) that Shimek and wife conveyed the lands to Kasha, who assumed payment of the indebtedness, the note, and mortgage ; (4) that other defendants had, or claimed to have, an interest in the real estate, which interest, if any they had, was inferior to the mortgage lien of the plaintiff.

The defendants Shimek and wife and Kasha and wife answered : (1) Payment to the plaintiff ; (2) payment to the payee without notice of the assignment. The defendants, the Mutual Benefit Life Insurance Company and Bartlett Brothers, pleaded payment by the defendants, Shimek and Kasha, and alleged that they had a valid and prior lien on the mortgaged premises on account of a loan of $1500, made to the defendant Kasha, with which to pay off the claim of plaintiff.  The plaintiff's reply was, in substance, a general denial.   A trial was had by the court, without a jury, which resulted in findings and judgment for the plaintiff for $1869.35, and foreclosure of the mortgage.   The findings and judgment were not satisfactory to the plaintiff, nor to any one of the defendants.    The plaintiff and all of the defendants filed motions for a new trial, which motions were overruled, and the case is presented to this court for review on a petition in error by the plaintiff and cross-petition by the defendants.

The plaintiff in error alleges that the trial court erred in its conclusion that the payment of the $700, on July 14, 1891, by Shimek and Kasha to the Western Farm Mortgage Trust Company was a good and valid payment, for which the defendants should have credit.   The record discloses the following facts : The Western Farm Mortgage Company was a corporation at Lawrence, organized for the purpose of negotiating loans.   The defendants Joseph Shimek and Barbab Shimek, on May 1, 1886, procured a loan of $2200 from the mortgage company, for which they executed and delivered their certain real-estate bond secured by a mortgage on land in Republic county, whereby they promised to pay to W. J. Neill, or order, the amount thereof on the 1st day of May, 1891, with

interest at seven per cent. per annum. W. J. Neill was a clerk in the employ of the mortgage company, and the loan was made by that company, the bond and mortgage being taken in the name of Neill for the convenience of the mortgage company. Neill had no interest in the bond or mortgage at any time.

The Western Farm Mortgage Company sold the bond and mortgage, with others, to Kendall Brothers, of Reading, Pa., and Neill transferred the same by writing on the back of the bond the words : "For value received, I hereby assign and transfer the within bond, together with all my rights, title and interest in the mortgage deed securing the same, to . . . or order.—W. J. NEILL." This assignment does not constitute a commercial indorsement. After the execution of the bond and mortgage in question, the Western Farm Mortgage Company transferred its business to Denver, Colo., where it was reorganized as the Western Farm Mortgage Trust Company. The Western Farm Mortgage Trust Company thereupon succeeded to all the business of the Western Farm Mortgage Company. Shimek paid to the mortgage company and to its successor, the trust company, each coupon as it became due and received in return the coupons. The note and mortgage become due and payable May 1, 1891. Shimek and Kasha, on July 14, 1891, paid $700 on the principal to the trust company. Afterward, on July 25, 1891, they paid the trust company $1560.70, the remainder of the principal, with interest from the maturity of the note.

The bond or note in question is not a negotiable instrument ; it is something more than a promise to pay money. The following stipulations were written in the body of the bond :

"It is further expressly agreed, that in case of de-

fault of the payment of any instalment of interest or any principal thereof for the space of ten days after it becomes due and payable, or in case of breach of any of the covenants or conditions in the mortgage deed securing this bond contained, to which said deed reference is hereby made and which is made a part of this contract, in either said case the principal sum, with accrued interest, shall at the election of the legal holders hereof at once become due and payable without further notice, may be demanded and collected, anything herein contained to the contrary notwithstanding.''

This makes the mortgage and note one contract. Among the stipulations of the mortgage which are thus made a part of the contract are stipulations for the payment of the taxes, for the insurance of the property against strip or waste, and to keep improvements in repair.   These provisions rendered the note non-negotiable. (*Chapman v. Steiner*, 5 Kan. App. 326, 48 Pac. 607 ; *Killam v. Schoeps*, 26 Kan. 310.)

The assignment of the mortgage from Neill to Wheeler was not acknowledged.   It was therefore not entitled to record, and if recorded the record thereof would not impart constructive notice of such assignment to the maker of the note and mortgage.   The recording of the unacknowledged assignment does not, of itself, give notice that the note and mortgage have been transferred.   ( *Chapman v. Steiner*, supra ; *Briggs v. Latham*, 36 Kan. 206, 13 Pac. 129 ; *Fox v. Cipra*, 5 Kan. App. 312, 48 Pac. 452.)

The trial court properly found that the $700 payment made July 14, 1891, to the Western Farm Mortgage Trust Company was a good payment on the bond and mortgage, and extinguished the indebtedness to that extent.   The motion of the plaintiff in error for a new trial was properly overruled.

The defendants in error allege that the trial court erred in finding that Sprengle was the agent of Shimek and Kasha, so that his knowledge of the assignment was their knowledge, and in finding that Sprengle had knowledge of the assignment of the mortgage prior to the final payment of the amount due on the principal and interest.   The record shows that Shimek and wife on the — day of July, 1891, sold and conveyed the mortgaged premises to Kasha, who assumed the payment of the mortgage in question.   The final payment of $1560.75 was made on July 25, 1891, by Sprengle for Kasha.   There is no evidence that Shimek or Kasha had actual, personal notice of the assignment of the indebtedness, the bond or mortgage, to Wheeler or to the plaintiff prior to the date of this payment.   The contention was that Sprengle, as the agent of Kasha, had such notice, and that Kasha was bound by the notice to his agent.   Sprengle was the local agent for Bartlett Brothers, loan agents, of St. Joseph, Mo.   Kasha applied to him for and procured a loan of $1500, to be secured by a mortgage on the farm in question, with which to pay the Shimek mortgage.   Sprengle examined the records of the mortgage in question in the register of deeds' office for the sole purpose of ascertaining the date, amount, maturity of the loan, and description of the property. He procured this information, and satisfied himself that there was nothing against the land except the $2200 mortgage in suit, $700 of which had been paid. He ordered an abstract of the title, which was made and forwarded to Bartlett Brothers without examination by him.   The abstract showed the record of the unacknowledged assignment from Neill to Wheeler. Sprengle testified as follows :

"Ques.  Did you procure an abstract?   Ans.  I left an order with D. C. Baker & Co.

Wright v. Shimek.

"Q. Did that abstract show that the assignment had been made? A. I presume it did.

"Q. Do n't you know it? A. I do n't remember. I paid out after having satisfied myself that there was nothing against the land except the $2200 mortgage.

"Q. When you got the abstract then you discovered there was an assignment? A. I do n't remember that I did; I did n't pay any attention.

"Q. Did n't you read the abstract? I ask you if you did n't read that abstract. A. I cannot say that I did,

"Q. Do you mean to say that you took the abstract and did n't read it? A. I am familiar with the records in the recorder's office and paid out on my own examination.

"Q. Do you mean to say that you did n't discover the note in the abstract that there was this kind of an assignment upon the mortgage? A. I have no recollection whatever in regard to it.

"Q. How long did you keep that abstract in your possession? A. Just from the time it came on one mail and I sent it on next to Bartlett Brothers.

"Q. (By the court) When did it come into your possession with reference to the time this money was paid? A. Well, I could not say as to that, but drew on Bartlett Bros. the next day. We were in a great hurry and I was very particular to satisfy myself that the title was all right. The abstracter went over the record with me and I was convinced that the title was all right.

"Q. Was the abstract sent to you before or after you paid the money? A. I would not say, for it may have been kept until the mortgage was recorded and then sent by Baker & Co. to Bartlett Bros.

"Q. (Mr. Angevine) Now, at the time you paid the money had you seen the abstract? A. I think not. I think I had not seen the abstract until recorded.

"Q. Now, as a matter of fact, was n't the abstract made out after you paid the money out, and after the $1500 mortgage was paid and then carried on the ab-

stract? A. Yes, it was after. On my way I went by Cuba, satisfied myself that the $700 had been paid, and went on to Washington and got a sight-draft of $1500 and sent on.

"Q. At that time had you seen the abstract? A. I had not.

"Q. How long after that before you saw it afterwards? A. I do not know that I ever saw one. It may have been sent right on to Bartlett Bros., and I presume that Baker & Co. sent the mortgages and sent the abstract right on to Bartlett Bros.

"Q. (Mr. Bradford) I understand you to say that you went over the record with Mr. Baker and looked at the pages? A. I went over the index of the records to satisfy ourselves that the title was all right and that there was nothing against it except the $2200 mortgage, and looked up the taxes.

"Q. You did look at the index and the mortgage? A. Yes, we looked at the mortgage, I suppose to see that the amount was all right.

"Q. (Mr. Angevine) Do you remember that you looked at the mortgage? A. I do not, but my judgment would be that we looked at the mortgage to see that the amount was all right.

"Q. And you didn't look at it any further? A. No, sir.

"Q. And you don't know whether you looked at it that far? A. My judgment is that I looked at it to see that the amount was all right.

"Q. (By the court) When did you learn that the mortgage had been assigned? A. I suppose it was months after. I waited a long time for the papers and kept writing; wrote them frequently for several weeks, and they kept promising that they would send them, but never came.

"Q. (Mr. Angevine) If you looked at the records at all did you see any assignment in connection with it? A. I am very positive that I did not.

"Q. You may state whether you sent the $1500 loan and the two mortgages and the abstract and papers pertaining thereto, that you have heretofore testified

about, before or after you made the remittance to Denver of the $1560.75.   A.  The remittance was sent to Denver before the papers were sent to Bartlett Bros.''

This is the substance of all the testimony which tends to show that Sprengle had knowledge of the assignment.   This testimony is uncontradicted, and shows that at the time Sprengle remitted the final payment the abstract was not made out.   It also fails to show that Sprengle saw the assignment of the mortgage on the margin of the record.   This is all the evidence showing or tending to show that the defendants or either of them had notice of the transfer of the note and mortgage before or at the time of the last payment.   The trial court found from this evidence :

'' That Sprengle examined the record, found the title perfect in Kasha, subject only to the Shimek mortgage.   He examined the record of the mortgage on the page where recorded to ascertain the date, amount, maturity of the loan, and description of the property.   Sprengle is not positive that he saw the record of the assignment, but, being recorded on the margin of the record of the mortgage, it would be an impossibility to see and examine the record of the mortgage without also seeing the record of the assignment.   He must have seen and did see.   His seeing it, however, probably did not make any lasting impression on his mind.''

The Shimek mortgage was recorded at pages 632 and 633, book '' R '' of mortgages.   The plaintiff in error in his brief says :  ''At the time Sprengle examined the records the assignment was of record, as shown on page 206 of the record herein.''   The assignment appears by the record of the case-made to be on the left margin at page 633, outside the leaded line, and at right angles to the copy of the mortgage, so that the assignment was not readable except by

turning the record book a distance of one-fourth of a circle. It also appears that the date, amount, maturity of the loan and description of the property are all shown on page 632, the page preceding the one on which appears the record of the assignment. It was therefore necessary for one to look at the page on which the assignment was recorded for the information desired by Sprengle. There is no evidence that he did examine the page containing the assignment. The finding that Sprengle saw the record of the assignment is not supported by the evidence.

The assignment from Neill to Wheeler was not acknowledged, and the record thereof did not impart constructive notice. Actual notice was required. In the absence of actual notice of an assignment of nonnegotiable paper, payments may be made to the original payee. The payment thus made was a valid payment, for which the defendants were entitled to credit. For the reasons herein expressed the motion of the defendants in error for a new trial should have been sustained. The judgment will be reversed and the case remanded for a new trial.