### Eleanor C. Williams v. William F. Pelley et al.

1. AGENTS—*Acts in Excess of Authority.*—An agent merely to receive the interest and principal of a note is not authorized to take the payment of the principal prior to the same becoming due.

2. MORTGAGES—*Assignment of, Must be of Record or with Notice to the Mortgagor.*—The assignee of a mortgage, to be protected, should either give actual notice to the mortgagor of the assignment or have the assignment filed for record.

3. PRINCIPAL AND AGENT—*Estoppel of the Principal to Deny the Title of Innocent Parties Dealing with His Agent.*—When a principal, the owner of a note and mortgage, allows his agent to appear as the owner of, or as having full power of disposition over the same, and innocent parties are thus led into dealing with such apparent owner or person having the apparent power of disposition, they will be protected.

Foreclosure of a Mortgage.—Appeal from the Circuit Court of Winnebago County; the Hon. CHARLES E. FULLER. Judge, presiding. Heard in this court at the April term, 1901. Affirmed. Opinion filed July 12, 1901.

ARTHUR H. FROST and ROBERT G. McEVOY, attorneys for appellant.

R. K. WELSH and ARTHUR E. FISHER, attorneys for appellees.

MR. JUSTICE WATERMAN delivered the opinion of the court. Appellees, on November 26, 1892, executed a note and

mortgage to one Charles Sabin for $2,800, due in three years. On March 23, 1893, Sabin assigned these securities to Marcus S. Parmele by a separate instrument of assignment and by specially indorsing the note to Parmele. Parmele subsequently and before cancellation of the note placed this assignment on record. Some time during the year 1893, and subsequent to March 23d, Parmele, then doing business for the appellant, Eleanor C. Williams, in connection with her investment in the city of Rockford, turned over this note and mortgage to her account. The note was assigned to her, this assignment appearing on the back of the note just below the assignment from Sabin to Parmele. Appellant claims that there was an assignment, by separate instrument, of the mortgage, and that she had possession of the note and mortgage a short time. Such assignment, if any, was never recorded. She gave no notice of her ownership of these securities to appellees. Shortly after she had obtained the note and mortgage from Parmele she turned them, with many other securities, back to him; this was in 1893. She thus by her own act placed the assignment of the mortgage to Parmele in his hands and enabled him to place the same on record, as he did, and thus deceive appellees into the belief that he was the owner of the mortgage. He was her general financial agent at Rockford. In the arrangement or contract which Parmele made with appellant he was to make her money earn seven per cent interest or was to account to her at that rate. He collected all interest on this note from appellees without informing them that appellant had any rights in it. He had continuous possession of it except for the brief period that it was in the hands of appellant. The receipts for the interest paid by appellees to Parmele did not indicate in any way that appellant had any claim on the note and mortgage. The note bore six per cent interest, yet Parmele accounted to appellant at the rate of seven per cent upon it.

In November, 1894, Parmele entered into negotiations with appellees with a view of getting a new long-time mortgage in lieu of this original one, which had then only

one year to run.  Appellees agreed to take up and pay the old mortgage by giving a new one, after having a small allowance made to them to cover the expenditure of time and money in the change.  Before the new note which was to take up the old one was turned over, appellees had the records and an abstract of title written up.  They submitted the abstract to their attorney for examination and opinion.  This abstract showed that the original (Sabin) mortgage stood of record in Parmele's name.  The examining attorney advised appellees that it was proper for them to turn over the new securities to Parmele in payment and discharge of the old, and take from him a release of the original mortgage.  This was done.  The original mortgage was released by Parmele and the old note surrendered and canceled. · After closing these transactions, one of appellees noticed on the back of the old note an assignment to Mrs. Williams, and when next in Rockford, called and inquired of Parmele what this meant.  He informed them in substance that he had raised some money on the note at one time but that this assignment meant nothing and that the paper belonged to him.

Parmele afterward sold and assigned the new mortgage to one Swingley, by a written assignment, but without indorsement upon the note.  Appellees thereafter paid interest upon the new mortgage to Parmele and heard nothing of the old one until October, 1896, when Parmele made an assignment for the benefit of his creditors.  On October 8th the cashier of a bank at Racine sent to Mr. Pelley, one of the appellees, the following letter:

COMMERCIAL & SAVINGS BANK,
RACINE, WISCONSIN, Oct. 8, 1896.
W. F. PELLEY, ESQ.,
        Rockford, Ill.
DEAR SIR:  Mrs. E. C. Williams, a customer of ours, holds a mortgage on property owned by you amounting to $2,800 and I write to ask you if you will kindly send me, by return mail, a statement of this mortgage, stating if the amount is still due, $2,800, and also state up to what date the interest was paid and at what rate.

The mortgage was in the hands of M. S. Parmele, who

has made an assignment, and I am trying to get full information regarding all her loans.

Thanking you for a reply by return mail, I am,

Yours truly,

C. R. CARPENTER, Cash."

On October 14th, Nora Pelley replied to this letter by the following postal card:

"ROCKFORD, ILL.

DEAR SIR: Mrs. E. C. Williams note was made over to Mr. Parmele three years ago he still holds the note genst us but we cant finde out where it is now we pade him the interest, pade every 6 months; it will be due the first of November agen. i am sorrow for his and eny thing i can due to help him get her money i will do it.

MRS. NORA PELLEY."

The postal card is postmarked "Rockford, Ill., Oct. 13, 1896, Racine, Wis., Oct. 15, 1896."

The cashier's letter was the first notice appellees had of Mrs. Williams' ownership of any mortgage. They then had no knowledge that she claimed the old mortgage. Shortly after this Mr. Simmons, appellant's attorney, called upon appellees. The result was that appellees decided they could do nothing for Mrs. Williams and notified her representative that if she claimed any rights she would have to establish them in court. This was early in 1897. Appellees, on November 14, 1899, paid the Swingley mortgage. Thereafter, July 6, 1900, appellant filed the bill in this cause.

It is quite true that a mere agent to receive interest and principal is not authorized to take payment of the principal prior to the same becoming due. Lawther v. Evarts, 63 Ill. App. 432; same, 165 Ill. 487; Scott v. Gilkey, 153 Ill. 168.

If appellees, before the first mortgage given by them became due, had known that Parmele was not the owner of the indebtedness represented by the note and mortgage then in his hands, the payment made by them to him would not have been good as against Mrs. Williams, the real owner of the notes and the mortgage.

The loss of Mrs. Williams was occasioned by her own neglect; she might have placed the assignment of the mortgage to her upon record or she might have given notice to

appellees that she was the owner thereof, and in respect thereto they must deal only with her. She did neither; on the contrary, she trusted Parmele so implicitly that she enabled him by false representations to deceive appellees and to deal with them as though he were the actual owner of the note and mortgage which he discharged. Appellees, under such circumstances, were induced to give a note and mortgage in satisfaction of the old. Parmele assigned the new mortgage to one Swingley. Some time thereafter Parmele failed, and after this, for the first time, appellees learned that Parmele, in dealing with them, had really been acting, not for himself, but as the agent of Mrs. Williams, and that the mortgage and note which he had surrendered to them as his own belonged to appellant. Up to this time they had not paid the new mortgage indebtedness, which mortgage had been assigned to Swingley.

Appellant was, early in 1897, informed of the fraud perpetrated by Parmele, the discharge and surrender of the first mortgage made by appellees, the execution of new papers and the written assignment of the new mortgage to Swingley.

Appellant was then in a position to contest the validity as against her of the assignment of the new mortgage to Swingley and to insist that it having been given in satisfaction of her mortgage it belonged to her, and that Swingley could not hold it against her. What her rights, if any, as against Swingley were, has never been determined. She apparently did not think she could maintain an action against him to recover the mortgage which he had, and so allowed, without remonstrance or proceedings to prevent, appellees some two years thereafter to discharge the mortgage they had given, then held by Swingley.

We do not think that the evidence before the court below shows that appellees were not justified in dealing with Parmele as the owner of the first mortgage. They seem to have exercised all proper caution before giving the new mortgage. They had the records examined and ascertained that there was outstanding of record nothing to

show that Parmele was not the owner of such mortgage as he represented himself and appeared to be. They took advice of counsel as to what was right and prudent for them to do.

. Appellee is the unfortunate victim of the confidence she reposed in Parmele, the opportunity for perpetrating fraud she bestowed upon him and her neglect to place of record or keep the evidence of her ownership of the mortgage and note he held in trust for her so that no one could be deceived by him. The decree of the Circuit Court is affirmed.