## SEIBOLD v. RUBLE *et al.*

No. 3037.    Opinion Filed December 23, 1913.

(137 Pac. 697.)

1.   **BILLS AND NOTES—Action by Assignee—Defense—Payments to Payee.** Where one, who assumes the payment of a nonnegotiable note and attached interest coupons, has no notice of the assignment of the note and coupons, or of the mortgage given to secure the payment thereof, proof of the payment of the note and coupons to the payee named therein, at the designated place of payment, is a good defense against proceedings on the part of the assignee to enforce payment.

2.   **SAME—Nonnegotiable Note—Defense.** A nonnegotiable note, transferred to an innocent purchase before maturity and for a valuable consideration, without notice to the maker thereof, or

to one who assumes its payment, is subject to all legal defenses which might be interposed against the note in the hands of the original payee.

3.     SAME—Action by Assignee—Defense—Payment.   Where the assignee of a nonnegotiable note, to which are attached interest coupons, which note and coupons are secured by real estate mortgage, takes the same by indorsement on the principal note alone, and by written assignment of the mortgage, which assignment is not put of record for over four and one-half years, and fails to give the maker any notice of the assignment, and allows the original payee to collect the interest coupons at the designated place of payment, either from the maker of the coupon notes or the subsequent owner of the mortgaged lands, and to forward the canceled coupons to the one making payment, the subsequent payment in good faith and without notice of the principal note, though before maturity, to the payee named therein, at the designated place of payment, protects the one making payment against liability to the assignee, although the note was not produced and delivered at the time it was paid, it not being known to the payer that the note was not in the possession or under the control of the one to whom payment was made.

4.     SAME—Effect to Discharge Liability.   Under the facts stated in the preceding paragraph, where such original payee is also the agent of the subsequent owner of the mortgaged land, for the purpose of procuring a new loan and paying off the old, his failure to pay over the proceeds of the loan by him received to the assignee of the note does not render the payer liable to a second liability thereon, the money having been received by the former and ostensible owner in settlement of the note.

5.     SAME.   Payment in such case having been made to the ostensible owner, who thereupon executes a release of the outstanding mortgage, it cannot be said that the failure to pay over to the assignee the money paid was an act for which the one causing payment to be made would be liable.

(Syllabus by Sharp, C.)

*Error from Superior Court, Custer County;*
*J. W. Lawter, Judge.*

Action by George M. Ruble against W. F. Seibold and another.  From a judgment in favor of plaintiff, defendant named brings error.  Affirmed.

*George T. Webster,* for plaintiff in error.

*M. L. Holcombe,* for defendants in error.

Opinion by SHARP, C.  On July 28, 1903, James Abernathie executed to the defendant Winne & Winne his promissory

note in the sum of $720, payable ten years after date. To said note were attached eleven interest coupons, of which the first was for $8.41, due October 1, 1903, nine for $50.40, due October 1st of each succeeding year thereafter, and one for $41.59, due July 28, 1913. The note and interest coupons were secured by a real estate mortgage on a quarter section of land in Custer county. On June 18, 1904, James Abernathie sold said land to J. F. Lamb, who assumed the payment of the Winne & Winne mortgage indebtedness. On the 4th day of December, 1906, the land so mortgaged was sold by Lamb to the defendant in error, Ruble, who likewise assumed the payment of said mortgage indebtedness. July 12, 1907, defendant in error, Ruble, made application to the Union Central Life Insurance Company of Cincinnati, Ohio, for a loan of $1,200 on said land, naming the defendant Winne & Winne as his agent for that purpose. A loan of $1,100 was thereafter made, and the proceeds thereof paid to the order of Winne & Winne by the insurance company. The payee of the $720 note, Winne & Winne, on August 5, 1903, executed an assignment of the mortgage given to secure the same to the plaintiff in error, W. F. Seibold, which assignment, however, was not placed of record in Custer county until April 13, 1908. On August 8, 1903, defendant Seibold claims to have purchased said note and mortgage, paying therefor the face of the note. An indorsement in blank was written upon the back of the principal note, assigning without recourse both it and the attached coupons, and, together with the written assignment of the mortgage, they were on said last-mentioned day delivered to defendant at his home in Danbury, Iowa. On October 9, 1907, Winne & Winne, claiming to be the owner of said original mortgage, executed a release thereof, which was duly recorded in Custer county on October 14th following. This, according to the record, perfected the title in Ruble, and made his mortgage of July 25, 1907, to the Union Central Life Insurance Company, a first lien on said land.

This action is brought by the plaintiff, Ruble, who claims to have paid to Winne & Winne, the payee of the original note, the amount thereof out of the proceeds of the loan obtained from

the Union Central Life Insurance Company, and seeks to cancel the assignment of the mortgage and indebtedness secured thereby, made by defendant Winne & Winne to the codefendant, W. F. Seibold, it being charged that the assignment of said mortgage, appearing of record, constitutes a cloud upon plaintiff's title to the land. Defendant Seibold in his answer seeks to recover a judgment on the indebtedness assigned him, and foreclosure of the original mortgage.

It is said by counsel for plaintiff in error in his brief that there is but one question involved in the case, namely, that of agency, and, if it be found that Winne & Winne was Ruble's agent to procure the loan from the insurance company, then that the former's embezzlement or wrongful application of the proceeds would be an act for which the principal, Ruble, must suffer.. This is the single issue upon which plaintiff in error seeks a reversal.

The first question necessary to determine is that of the negotiability of the Abernathie note, given Winne & Winne July 28, 1903, for $720. We do not understand it is seriously urged that the note is negotiable. Under the decisions of this court construing sections 4626 and 4627, Comp. Laws 1909 (which must control and determine its character), on account of the provisions of said note, obviously it is nonnegotiable. *Dickerson v. Higgins et al.,* 15 Okla. 588, 82 Pac. 649; *Clevinger v. Lewis,* 20 Okla. 837, 95 Pac. 230, 16 L. R. A. (N. S.) 410, 16 Ann. Cas. 56; *Clowers et al. v. Snowden et al.,* 21 Okla. 476, 96 Pac. 596; *Farmers' Loan & Trust Co. v. McCoy & Spivey Bros.,* 32 Okla. 277, 122 Pac. 125, 40 L. R. A. (N. S.) 177; *Bell v. Riggs,* 34 Okla. 834, 127 Pac. 427, 41 L. R. A. (N. S.) 1111; *Citizens' Savings Bank v. Landis et al.,* 37 Okla. 530, 132 Pac. 1101.

Being nonnegotiable, the rights of the transferee would be governed by the rule announced by this court in *Randall Co. v. Glendenning et al.,* 19 Okla. 475, 92 Pac. 158, in a very similar case:

"That where a nonnegotiable note is transferred to another, although that party is an innocent purchaser, and the transfer

is made before maturity and for a valuable consideration, yet if made without notice, either actual or constructive, to the makers thereof, it is subject to all the legal defenses which might be interposed against the note in the hands of the original payee."

There was no evidence that either Abernathie, Lamb, or Ruble had any knowledge of the assignment of the note by Winne & Winne to Seibold, but, on the other hand, each of these witnesses testified they had no such notice, while the defendant Seibold made no attempt to show that either of the respective owners of the land had any notice whatever of the assignment of the note and mortgage, except that, at the time of delivery to him, Winne & Winne had said that Abernathie would be notified of the assignment. Although, as already seen, the assignment of the mortgage was executed at Wichita, Kan., on August 5, 1903, and delivered to defendant at Danbury, Iowa, on August 8th following, it was not placed of record in the county where the land was situated until April 13, 1908. While the defendant Seibold, in his deposition given in the narrative form (at the taking of which it does not appear the plaintiff was represented), stated that he had had continuous possession of the note and mortgage from the time of his purchase until sent by him to his attorney in the preparation of the defense in the trial court, yet it appears from the uncontradicted evidence of Abernathie that he paid the first coupon to Winne & Winne, and received a notice (presumably from Winne & Winne), the following fall, of the maturity of the second coupon. Lamb testified that he paid two coupon notes to Winne & Winne, from whom he received letters accompanying the canceled coupons. The letter inclosing coupon number two, which matured October 1, 1904, was addressed to James Abernathie; while that inclosing coupon number three, which matured October 1, 1905, was addressed to J. F. Lamb; and both of these letters were signed by Winne & Winne. The evidence is somewhat confusing about coupon number four, which, while offered in evidence by plaintiff, does not appear in the record, which fact, however, in no wise affects the issues. Clearly it is made to appear that Seibold intrusted Winne & Winne to collect for him the maturing interest coupons, as he admits he intrusted

them to notify the maker of the assignment. Neither of the coupons in evidence appears to have been indorsed, and defendant's answer charges the assignment to have been made by an indorsement in writing on the back of the principal note. There was, therefore, nothing upon these canceled coupons calculated to notify either the original maker, or the subsequent owner of the land, that any one other than Winne & Winne had any interest in them. Not only was Seibold guilty of negligence in not putting his assignment of record for over four and one-half years, and in neglecting to notify the maker of the assignment, but by permitting the original payee to collect the annual interest, and surrender the canceled coupons, thereby justifying the belief that the note and coupons were still owned by and in the possession of the payee. Ruble had no actual notice of the assignment until the receipt of a letter by him from Stewart & Burns, of Wichita, on May 8, 1908, a few weeks after the assignment had been placed of record. The facts in this case are very similar to those in *Randall Co. v. Glendenning et al., supra.* In each case payment was made of an unmatured nonnegotiable note to the original payee, prior to the placing of record of the assignment, and without notice thereof to the maker. The same question was before the court, and the same conclusion reached in *Dickerson v. Higgins et al.,* 15 Okla. 588, 82 Pac. 649.

It is urged that upon payment of the proceeds of the Union Central Life Insurance Company loan to Winne & Winne, the original note not having been delivered up to plaintiff, payment was made at the risk of the payer, and as Winne & Winne was plaintiff's agent in procuring the loan, and was authorized to pay off all liens on the land, and to send the draft to make such payment at Ruble's risk, therefore plaintiff should not recover, and *McNabb et al. v. Hunt,* 28 Okla. 43, 119 Pac. 210, and *Owings v. Howington,* 31 Okla. 651, 124 Pac. 1058, are cited as authority supporting this claim. The cases are not in point, as the facts there involved readily disclose.

We must not lose sight of the fact that the note is nonnegotiable. There are many authorities supporting the rule that payment of a nonnegotiable note to the assignor, after the same has

been transferred, whether before or after maturity, but before notice of the transfer, will be deemed good. *Fowle v. Outcalt,* 64 Kan. 352, 67 Pac. 889; *Warren v. Gruwell et al.,* 5 Kan. App. 523, 48 Pac. 205; *Chapman v. Steiner et ux.,* 5 Kan. App. 326, 48 Pac. 607; *Lockrow v. Cline,* 4 Kan. App. 716, 46 Pac. 720; *Wright v. Shimek et al.,* 8 Kan. App. 350, 55 Pac. 464; *Killam v. Schoeps,* 26 Kan. 310, 40 Am. Rep. 313; *Quinn v. Dresback,* 75 Cal. 159, 16 Pac. 762, 7 Am. St. Rep. 138; *Morgan v. Neal,* 7 Idaho, 629, 65 Pac. 66, 97 Am. St. Rep. 264; *Pace v. Gilbert School et al.,* 118 Mo. App. 369, 93 S. W. 1124; *Gibson v. Pew,* 3 J. J. Marsh. (Ky.) 223; *Stevens v. Parker,* 5 Allen (Mass.) 333; *Allein v. Agricultural Bank,* 3 Smedes & M. (Miss.) 48; *Weinick v. Bender,* 33 Mo. 80; *Dunn v. Meserve,* 58 N. H. 429; *Swan v. Craig,* 73 Neb. 182, 102 N. W. 471.

In *Vann v. Marbury,* 100 Ala. 438, 14 South. 273, 23 L. R. A. 325, 46 Am. St. Rep. 70, in an opinion by Stone, C. J., it appeared that the maker of the note, which under the laws of that state was nonnegotiable, had no knowledge of the transfer by the payee, and it was held that payment made to the payee would be a complete protection, notwithstanding the note was not produced and delivered up at the time of payment. It was there said:

"In *Hart v. Freeman,* 42 Ala. 567, we said: 'The maker of a promissory note, not negotiable, may pay the same to the payee after its maturity, even though the note be not produced and delivered up at the time of payment, provided the maker has had no notice of the indorsement or transfer of the note to a third person. And such payment would be a valid and competent defense against the note, should it afterward appear and suit be brought thereon against the maker by another holder.' It was further held in that case that the burden of proof rests upon the plaintiff in the action, the defendant having proved the payment, to show that the defendant had notice of the transfer or indorsement before the payment was made. We cannot perceive that the fact that payment of the note in controversy was made before maturity takes the case without the influence of the decision in *Hart v. Freeman.*"

In *Bliss v. Young,* 7 Kan. App. 728, 52 Pac. 577, neither the last coupon nor the principal note was returned to the payer.

The notices were sent out by the Western Farm Mortgage Trust Company, the legal successor to the payee, Western Farm Mortgage Company, and it was held that the note being nonnegotiable and the maker not having actual or constructive notice of its assignment, he was protected in making payment to the payee. See, also, *Bensley v. Bartholf*, 137 Ill. App. 420; *Id.*, 234 Ill. 336, 84 N. E. 928; *Williams v. Pelley et al.*, 96 Ill. App. 346; *Mc-Cabe v. Farnsworth*, 27 Mich. 52; Pingree on Mortgages, sec. 1151. The rule is announced in Wade on Notice, sec. 431, as follows:

"One of the incidents of assignment of demands not recognized as negotiable, according to the law merchant, as well as overdue negotiable paper, is that the assignee takes subject to all equities subsisting between the parties at the time. The debtor is entitled to all credits for payment, as well as all set-offs which he may have against the original creditor. Even after the assignment has been made, the debtor, being ignorant of that fact, will be protected in making payment of the debt in whole or in part, or in any set-off to the demand he may have acquired."

While prudence would perhaps require, and the law in many cases exacts, that the payer, upon payment of an unmatured note, require its production, yet, where for a long term of years the assignee of a nonnegotiable note has permitted the assignor to pose as the ostensible owner, and in his behalf collect the annual interest, remit the same, and forward canceled coupons, without any form of notice to the maker, constructive or actual, of the assignment, the delivery of the note will not be required, unless it should appear that it was known to the payer that the note was not at the time in the possession of the one to whom payment was made. The assignee is charged with knowledge of the law that his note is nonnegotiable, and with knowledge of the fact that payment may be made to the payee, and in order that he may be protected, the law enjoins on him notice to the maker, of his claim of title, or at least to refrain from such conduct as will tend to warrant the belief that the payee yet remains the owner.

True, Ruble intrusted the payment of the first mortgage note to Winne & Winne, who at the time occupied a dual position,

being not only the agent of Ruble, who had assumed payment of the note, but, as well, the payee of the note.   The draft drawn by Ruble and wife on the Union Central Life Insurance Company was payable to the order of Winne & Winne, and was paid to his order by the drawee.   The money evidenced by the draft thus passed to Winne & Winne's individual credit, and, as against the plaintiff in error, was, in effect, a payment of the original note, not to Winne & Winne as agent of Ruble, but to Winne & Winne the ostensible owner.   The duality of the relation of Winne & Winne to Ruble marks a distinction between the case under consideration and many of the reported cases involving the question of agency.   Here the former owner of the note, and, so far as at the time known to Ruble, the real owner, received payment from one authorized to make payment, the original payee and ostensible owner even going so far as to execute a release of the original mortgage, in which it is recited that payment in full had been made.   The note having been paid, the plaintiff was entitled to the relief sought.

The judgment should be affirmed.

By the Court:   It is so ordered.