### FIDELITY TRUST CO. v. MAYHUGH et al.

(Circuit Court of Appeals, Fifth Circuit. November 26, 1920.)

#### No. 3505.

1. **Bills and notes ⟨⟩167—Provisions of mortgage do not affect negotiability of note.**

   Provisions in a mortgage securing a note against waste, and requiring the mortgagor to pay taxes and maintain insurance, relate to the security only, and do not affect the negotiability of the note.

2. **Bills and notes ⟨⟩337—Bad faith only will defeat title of purchaser of negotiable note.**

   The title of a purchaser of negotiable paper in due course before maturity is not defeated by his suspicion of a defect of title, or knowledge of circumstances which would excite the suspicion of a prudent man, or gross negligence; but that result can be produced only by bad faith on his part.

3. **Evidence ⟨⟩183—Existence of writing must be proved before secondary evidence of contents admissible.**

   The existence of a paper must be established before its contents may be proved by secondary evidence.

4. **Mortgages ⟨⟩249 (3)—Bona fide purchaser takes free from mortgage appearing satisfied of record.**

   A bona fide purchaser of land *held* to take it free from the lien of a mortgage which had been satisfied of record by the mortgagee, although he had previously transferred the mortgage by an assignment not recorded.

Appeal from the District Court of the United States for the Northern District of Texas; James C. Wilson, Judge.

Suit in equity by the Fidelity Trust Company against J. T. Mayhugh and others. Decree for defendants, and complainant appeals. Reversed.

Lewis M. Dabney and Robert Allan Ritchie, both of Dallas, Tex., for appellant.

Ben H. Stone, of Amarillo, Tex., and A. S. Rollins, of Dallas, Tex., for appellees.

Before WALKER, BRYAN, and KING, Circuit Judges.

BRYAN, Circuit Judge. Appellant, herein designated as plaintiff, a Missouri corporation, brought suit and prayed for judgment on a promissory note and for foreclosure of a mortgage upon sections 13 and 14 of a designated survey, given to secure the note, against J. T. Mayhugh and Laura V. Mayhugh, his wife, makers of the note, and mortgagors, N. B. Mayhugh, their son, and subsequent grantee of section 13, and the Federal Land Bank of Houston, Tex., subsequent mortgagee. The note sued on is as follows:

"Number 261.                                    Amount, $16,000.00.
                    "First Mortgage Coupon Bond.
          "Negotiated by Offutt & Potter, Woodward, Oklahoma.
                          "Woodward, Oklahoma, September 13, 1917.

"On the 1st day of October, 1927, for value received, we promise to pay to the order of Offutt & Potter the principal sum of sixteen thousand dollars, lawful money of the United States of America, with interest thereon, at the rate of 6 per cent. per annum, from date until maturity, payable annually according to the tenor of ten interest coupons hereto attached, and of even date herewith; the first one being for one thousand dollars due October 1, 1918, and nine others, each for nine hundred sixty dollars, and due annually thereafter. Both principal and interest payable at the office of Offutt & Potter, Woodward, Oklahoma. All sums herein promised to be paid shall bear interest at 10 per cent. per annum, payable annually after maturity, whether the same become due according to the terms thereof, or by reason of default of any payment of principal or interest. This note is given for an actual loan of the above amount, and is secured by a mortgage, of even date herewith, which is a first lien on the property therein described. If this note is placed in the hands of an attorney for collection, we hereby agree to pay the legal holder of the same an amount equal to 10 per cent. thereof, additional, as attorney's fee. One hundred dollars, or any even multiple thereof, or the full amount, may be paid on this note on October 1, 1919, or annually thereafter."

The mortgage is also to Offutt & Potter, bears the same date as the note, and contains the following provisions:

"The said first party shall not commit or suffer waste, shall pay all taxes and assessments upon said described real property, and any taxes or assessments made upon said loan or the legal holder of said note and mortgage on account of said loan, to whomsoever assessed, including personal taxes, before delinquent, shall keep the buildings thereon insured to the satisfaction of said second party for at least twenty-two hundred dollars, delivering all policies and renewal receipts to said second party, and upon satisfaction of this mortgage will accept from the mortgagee a duly executed release of the same, having it recorded, and pay the cost of recording. A failure to comply with any of the agreements herein shall cause the whole debt secured hereby to at once become due and collectable, if said second party or assigns so elect."

Plaintiff alleges default in interest and other breaches not necessary to mention.

The defendants J. T. Mayhugh and Laura V. Mayhugh, his wife, in their answer admitted the execution of the note and mortgage, but averred that they had received no consideration therefor, that a written application, containing a clause constituting Offutt & Potter their agents to procur the loan, accompanied the note and mortgage,' that said application was delivered by Offutt & Potter to plaintiff, and that plaintiff was aware of the contents of said application at the time it took the note and mortgage. The answer of these defendants further alleged a release by Offutt & Potter of the note and mortgage, and a deed to their son, N. B. Mayhugh, of section 14, for a valuable consideration. Defendant N. B. Mayhugh joined in the answer of the defendants J. T. Mayhugh and Laura V. Mayhugh. It is unnecessary to state the defense of the Federal Land Bank of Houston, inasmuch as it was stipulated at the trial that the liens of this defendant are superior to the lien asserted by plaintiff.

Plaintiff filed in evidence the note and mortgage sued on. The note was indorsed by Offutt & Potter without recourse. The mortgage was filed for record September 14, 1917, the day after it was executed. Plaintiff also filed in evidence assignment of mortgage from Offutt & Potter to itself, dated October 15, 1917, and filed for record August 5, 1918. Plaintiff's vice president, Lester W. Hall, testified that on October 15, 1917, acting for plaintiff, he made a loan of $10,000 to Offutt & Potter upon their note of that date and accepted the note and mortgage of Mayhugh and wife as collateral security and that there was a balance due on the note of Offutt & Potter of $11,834.57, including principal and interest as of the date of his testimony. It is for this balance, together with interest and attorney's fees, that plaintiff sues.

On cross-examination the witness Hall admitted that he thought an application accompanied the Mayhugh note and mortgage, and that he told the attorney for defendants in Kansas City that he had had it, and thought he had forwarded it to his attorneys in Houston. This witness further testified, without objection, that upon examination of his correspondence with his attorneys he discovered that he only inclosed the note, mortgage, and assignment, that he then searched for the application, and could not find it, and that his impression at the time of testifying was that he had never had it. A blank application was shown this witness by defendants, and he was asked if it were not a copy of the form of application used by Offutt & Potter, and answered that, as nearly as he could remember, it was; that he was familiar with it; that plaintiff had made about 28 farm loans to Offutt & Potter, and that the form shown him accompanied practically all the loan papers. This form of application was admitted in evidence over plaintiff's objection, and to the ruling of the court admitting it an exception was noted. It contains two clauses which defendants contend preclude plaintiff from being considered a holder of the note in due course, but which, on the contrary, it is argued, were sufficient notice that Offutt & Potter were agents of the mortgagors to procure a loan for them. These clauses are as follows:

"I. ———, do hereby appoint Offutt & Potter, of Kansas City, Mo., my agents to procure or make a loan for me of $———, * * * secured by first mortgage, of approved form, on real estate, described as follows," etc.

"And I do hereby constitute and appoint Offutt Bros. my attorneys irrevocable, for me and in my name, place, and stead, to procure this loan from any person, persons, or corporations, and to forward, to the holders of notes for principal and interest, the interest money as the same becomes due from time to time, and the principal whenever it may, from any cause, become due and payable, hereby ratifying and confirming all that my said attorneys may do in the premises as fully as if done by myself."

The witness Hall further testified that he made no inquiry of Offutt & Potter as to the value of the security. At the request of defendants, this witness produced the checks of Offutt & Potter, drawn against the loan, from which it appeared that the entire proceeds were withdrawn on October 17, 1917; all the checks being certified and payable to another bank. On redirect examination, Hall testified that he had made two trips over the territory where the mortgaged land lies, with a view to lending money, within six months of the date of the loan in question; that these trips were made in company with other officials of the plaintiff corporation, and it was decided that they could afford to lend from $8 to $15 per acre on the land; that he first became acquainted with the firm of Offutt & Potter the latter part of 1916 or early in 1917; that he inquired of the Guaranty Title Company, of Kansas City, of which he was a director, about the standing of the firm of Offutt & Potter, and was informed that the Guaranty Title Company had investigated and found them well connected; and that all the information he acquired seemed to show they were reputable people.

The defendant J. T. Mayhugh testified that he resided in Plainview, Tex.; that at the date of the note and mortgage he owned the two sections of land, and that they were incumbered to. the extent of over $12,000; and that at the time of the execution of the note and mortgage he was not acquainted with either member of the firm of Offutt & Potter. This defendant gives the following account of the negotiations leading up to and accompanying the execution of the note and mortgage:

"In September or thereabouts, 1917, my son, Norman, who had been authorized by me to secure a loan on the land, applied to Offutt & Potter, through their agent, Mr. Whisenant, for such loan. They agreed to make it, and September 13, 1917, I executed the deed of trust on the lands to secure notes to the amount of $16,000, and delivered same to Mr. Whisenant, as agent for Offut & Potter. At the time the deed of trust and notes were executed, while in the office of L. R. Pearson, attorney, in the Grant Building, in Plainview, Tex., in the presence of Mr. Pearson, my son, Norman, Mr. Whisenant, and myself, Mr. Whisenant suggested that it would be necessary for these notes to be sent in to the office of Offutt & Potter, represented to be in Kansas City, Mo., for inspection, before any money could be had, and he represented that such was customary practice. He suggested that there would be plenty of time to do that and get the money back in time to take up the notes which were against the land, which was to be paid October 1st, I explained to him the necessity of having the money by that time, and I let him have the notes to send in, with the distinct understanding that the money was to be back by October 1st. I delivered the deed of trust to Mr. Whisenant, who represented himself to be agent of Offutt & Potter. I delivered the deed of trust and notes to Mr. Whisenant, whose office is in the Grant Building, in Plainview, Tex., for

the purpose, as he represented it, that they might be inspected at head-quarters office of Offutt & Potter, and with the distinct understanding that the money should be ready by October 1st, in order to take up the liens against the property. I never received any money at all on the notes and deed of trust, from Offutt & Potter, or either of them, or from any one for them."

April 15, 1918, Offutt & Potter executed satisfactions or releases of the mortgage, at which time J. T. Mayhugh refunded $725, which represented the amount Offutt & Potter had paid the General Land Office for patent to section 14, including expenses in connection there-with. The defendants Mayhugh testified they did not learn until July, 1918, that Offutt & Potter had assigned the note and mortgage to plaintiff.

On or about May 7, 1918, J. T. Mayhugh and wife conveyed sec-tion 13, by deed, to their son, N. B. Mayhugh, and July 18, 1918, N. B. Mayhugh, as admitted by stipulation, executed a note for $10,000, and mortgage to secure the same upon said section 13, and applied the proceeds in part payment of the purchase price. Both father and son testified that the balance of the purchase price of section 13 was represented by the services of the son theretofore rendered to the father.

Upon this evidence the trial court found that plaintiff is not the holder in good faith or in due course of business of the note and mort-gage, that defendant knew the contents of the application to Offutt & Potter for a loan, that the application actually accompanied the note, that plaintiff knew Offutt & Potter were agents, that plaintiff will-fully refrained from inquiry as to the genuineness of the note, and that plaintiff knew the note was being misappropriated, and entered a decree dismissing the bill and canceling the note and mortgage.

The evidence shows, without conflict, a want of consideration. Of course, the note and mortgage were unenforceable in the hands of Of-futt & Potter. Only the holder in due course of a negotiable instru-ment is protected against a defect of title to it. The questions for de-termination, therefore, are (1) whether the note is negotiable; and (2) whether plaintiff is a holder in due course. If the evidence requires that either of these question be answered in the negative, there is no right of recovery in the plaintiff.

[1] The note, on its face, is negotiable; but defendants insist that it was rendered nonnegotiable because of the above-quoted provisions in the mortgage, against waste and requiring defendants to pay taxes and procure insurance. These provisions do not affect the negotiabil-ity of the note, because they relate only to the security, and not to the indebtedness. Thorp v. Mindeman, 123 Wis. 149, 101 N. W. 417, 68 L. R. A. 146, 107 Am. St. Rep. 1003; Farmers' National Bank of Tecumseh v. McCall, 25 Okl. 600, 106 Pac. 866, 26 L. R. A. (N. S.) 217; 3 R. C. L. 871; Chicago Railway Equipment Co. v. Merchants' Bank, 136 U. S. 268, 10 Sup. Ct. 999, 34 L. Ed. 349.

[2] In approaching the question of the rights of a holder in due course, it is well to keep in mind the following excerpt from Murray v. Lardner, 2 Wall. 121, 17 L. Ed. 857:

"The possession of such paper carries the title with it to the holder: 'The possession and title are one and inseparable.' The party who takes it be-

fore due for a valuable consideration, without knowledge of any defect of title, and in good faith, holds it by a title valid against all the world. Suspicion of defect of title, or the knowledge of circumstances which would excite such suspicion in the mind of a prudent man, or gross negligence on the part of the taker, at the time of the transfer, will not defeat his title. That result can be produced only by bad faith on his part. The burden of proof lies on the person who assails the right claimed by the party in possession. Such is the settled law of this court, and we feel no disposition to depart from it. The rule may perhaps be said to resolve itself into a question of honesty or dishonesty, for guilty knowledge and willful ignorance alike involve the result of bad faith. They are the same in effect. Where there is no fraud, there can be no question. The circumstances mentioned, and others of a kindred character, while inconclusive in themselves, are admissible in evidence, and fraud established, whether by direct or circumstantial evidence, is fatal to the title of the holder."

In First National Bank v. Wade, 27 Okl. 102, 111 Pac. 205, 35 L. R. A. (N. S.) 775, the Supreme Court of Oklahoma used this language:

"This court is committed to the doctrine that bad faith, not merely a notice of circumstances sufficient to put a prudent man on inquiry, is necessary to defeat recovery by the holder of negotiable paper, whose right accrued before maturity."

In the case of McPherrin v. Tittle, 36 Okl. 510, 129 Pac. 721, 44 L. R. A. (N. S.) 395, the court said:

"The question was one of good faith on his part; and knowledge of circumstances sufficient only to put an ordinarily prudent person upon inquiry was not sufficient to defeat his title and right of recovery."

This is an Oklahoma contract. Section 56 of the Negotiable Instruments Law (Laws 1909, c. 24, art. 5), which is in force in Oklahoma, is as follows:

"To constitute notice of an infirmity in the instrument or defect in the title of the person negotiating the same, the person to whom it is negotiated must have had actual knowledge of the infirmity or defect, or knowledge of such facts that his action in taking the instrument amounted to bad faith."

The trial court found, as a matter of fact, that the plaintiff knew the notes had been misappropriated by Offutt & Potter. This finding could have been arrived at only by imputing to plaintiff knowledge of such facts as would justify the inference that it had actual knowledge of this ultimate fact. It becomes necessary to inquire whether actual knowledge or willful ignorance, which is the same thing, can be imputed to plaintiff from facts and circumstances developed by the evidence. The circumstances relied on to show knowledge are: (1) Plaintiff's failure to make inquiry into the financial responsibility of the mortgagor; (2) plaintiff's failure to record the assignment of mortgage; (3) plaintiff's failure to investigate Offutt & Potter's title; and (4) the indorsement of the note without recourse.

The first and fourth circumstances are unimportant, because it is quite evident that plaintiff was not relying upon individual responsibility, but upon the value of the security, disclosed by the investigations of its own agents. The second and third circumstances do not indicate knowledge by plaintiff of the fraud perpetrated by Offutt & Potter. On the contrary, they afford strong corroboration of Hall's testi-

mony that he had confidence in the business integrity of Offutt & Potter. If Hall had suspected them of dishonesty it is not to be supposed that he would have failed to record the assignment of mortgage.

This is the circumstantial evidence which we are warranted in considering upon the issue of actual and implied knowledge, and bad faith. We recognize the principle that the circumstances ought all to be considered together, and not singly or separately. But, so considered, they show nothing more than carelessness and a too trusting disposition. We cannot escape the conclusion that these circumstances are insufficient, if taken separately, or together, to sustain the findings of the trial court.

[3] There is one other circumstance adverted to in the decree, the proof of which is practically assumed by counsel for defendants in their argument, and discussed in connection with the circumstances above considered: The form of application used by Offutt & Potter is dwelt upon at length and with much force, and, if it could be considered, would be more persuasive than all the other circumstances combined. Putting aside Hall's admission that he had a form of application at the time he took the note and mortgage as collateral security, and his testimony at the trial that he was, to the best of his belief, mistaken in his admission, we are confronted with the fact that it was nowhere shown by the evidence that any such or similar application was ever signed or executed by J. T. Mayhugh, or in his behalf, or by his authority. In their answer, defendants relied upon the existence of the so-called application, and pleaded that it constituted Offutt & Potter agents to procure a loan, was signed by the mortgagors, and delivered by Offutt & Potter to plaintiff. The testimony of both J. T. Mayhugh and N. B. Mayhugh is silent upon this question. Now, it is too well settled for discussion that the existence of a paper ought to be established before its contents can be proved by secondary evidence. The testimony of J. T. Mayhugh is in positive, direct contradiction of the idea that Offutt & Potter were agents to procure a loan. The defendants dealt with them as principals; they were seeking to borrow money, and understood that Offutt & Potter would lend it, and lend it promptly.

The similar case of Fidelity Trust Co. v. Fowler (Tex. Civ. App.) 217 S. W. 953, is urged in argument here; but in that case the application was signed, and the appellant had it at the time it acquired the note and mortgage. The construction of the application was necessarily before the court in the cited case, as was also the question of agency. Neither of these questions, for the reasons pointed out, is before us in this case. It follows that the trial court erred in admitting in evidence, over the objection of plaintiff, and in considering the effect of, the so-called form of application.

[4] Having determined that the note is negotiable, and that plaintiff is the holder thereof in due course, it becomes necessary to consider whether the conveyance of section 13 by J. T. Mayhugh to his son, N. B. Mayhugh, is discharged from the lien of the mortgage. The grantee is a purchaser without notice; for, as we have seen, he accepted the deed after Offutt & Potter's satisfaction of mortgage was

of record, and before he had knowledge of plaintiff's unrecorded assignment. Sufficient consideration is shown for the deed when the testimony as to services is taken in connection with the son's note and mortgage to the Federal Land Bank of Houston and the payment of the proceeds of $10,000 to his father. The variance between the answer and the evidence as to the section N. B. Mayhugh owns can readily be corrected by appropriate proceedings in the court below.

The decree appealed from is reversed, and the case is remanded for further proceedings not inconsistent with this opinion.